## RANDALL, Adm'r. *vs.* SHRADER.

1. Under the statute of distribution in this State prior to the passage of the acts of 1848 and 1850, an ante-nuptial agreement entered into between husband and wife, which stipulated that the wife "shall, during her natural life, have the sole management and control of" the slaves owned by her before marriage, "with the exclusive right to dispose of the same at her death," vests the entire estate in the slaves in the wife for her separate use; and if she die without disposing of them, they go to her administrator and next of kin, and not to her husband.

ERROR to the Circuit Court of Shelby.

Tried before the Hon. Geo. D. Shortridge.

Detinue by the plaintiff against the defendant in error, for certain slaves.

By the bill of exceptions it appears, that Zachariah Neal died, having made his will, which was duly admitted to probate, by which Frances Neal, his widow, was made residuary legatee of his estate, after the payment of his debts and a few specific legacies. Before the final settlement of his estate, but when the slaves in controverry were in possession of his widow, she, in contemplation of marriage with the defendant Shrader, entered into an ante-nuptial agreement with him, which was signed and sealed by both, and which declares "that the said parties having determined to enter together into the estate of matrimony, and being desirous to secure to the said Frances Neal, during her life, the control of certain property, and the right to dispose of the same at her death, it is agreed by and between the said parties, that the said Frances Neal shall, during her natural life, have the sole

management and control of twenty negro slaves now belonging to the estate of her former husband, Zachariah Neal, deceased, with the exclusive right to dispose of the same at her death, and that the said Frances Neal shall have like control of a wagon and carriage, and eight horses now in her possession." The marriage was solemnized, and the slaves remained in the possession of the parties until the death of the wife, who made no disposition of them. In the mean time the executors of Zachariah Neal made final settlement of his estate. Randall, the plaintiff in error, became the administrator of Mrs. Shrader, and brought an action of detinue to recover the slaves named in the agreement, from Shrader, the husband, who retained possession of them after the death of his wife, claiming them as his own. The court below charged the jury, that upon these facts the defendant was entitled to a verdict, which was accordingly rendered. The plaintiff excepted to this ruling of the court, and here assign it for error.

RICE & MORGAN, for the plaintiff in error:

1. The settled doctrine of this court is, that the husband is not entitled to the slaves owned by the wife at the time of the marriage, unless he had reduced them into his possession "during the life of the wife." Vanderveer v. Alston, 16 Ala. Rep. 497; Bibb v. McKinley, 9 Porter, 644.

2. Although the possession need not be *actual* in every case, it must be actual or constructive. Thus, possession by the wife's guardian is, by *operation of law* the possession of the husband. "This *constructive* possession of the husband, by virtue of which his marital rights attach, arises out of *the relation* in which the guardian stands towards him." McDaniel v. Whitman, 16 Ala. Rep. 343.

3. "Unless he reduces them into possession, *no property* vests in him, but they shall remain to the wife or to *her representatives*, after the coverture is determined." Bibb v. McKinley, 9 Porter's Rep. 642; Andrews v. Jones, 10 Ala. Rep. 422.

4. His possession must be "*as husband*;" for if it be a possession held as executor, or trustee, it will not vest the property in him. Nor will he acquire title to the property, if there be an *ante-nuptial* contract securing to the wife " during

her natural life," "the *sole management and control*" of the slaves, "with the exclusive right to dispose of the same at her death," and he resides with the wife and with her has possession of the slaves. "His possession will be referred to the deed, and is in law the possession of the wife." Lee v. Matthews, 10 Ala. Rep. 686; 9 Porter, 644, Supra.; Price v. Sessions, 3 How. U. S. Rep. 624; Clancey's Heirs and Wife, 132, 133.

5. The law never *implies* a contract, when there is an *express* contract. And so there cannot be a *constructive* (or implied) possession, when there is an *express* contract excluding such possession. 3 Johns. Chan. 87; 17 Johns. Rep. 548.

6. If the husband never acquires *possession during the life of his wife*, he cannot acquire title to her slaves. The accrual of his title depends on his acquiring such possession. By his own contract (in this case) before the marriage, he deprived himself of acquiring the possession *during the life of his wife*, and thus necessarily prevented the property from vesting in him. 10 Missouri, 368.

7. The words used in the ante-nuptial contract, create a separate estate in the wife, by indicating that the "intent was to secure the slaves to the use of the wife, in such a mode as to be inconsistent with *the enjoyment* of the property by the husband or with *the exercise of dominion over it by him*." Newman v. James, 12 Ala. Rep. 29; Clancey's Husband and Wife, 262, 267.

8. An agreement by a husband that "his wife shall enjoy and receive rents and profits," gives her a separate estate. O'Neal et al. v. Teague, 8 Ala. Rep. 349.

9. But whether a separate estate is created or not, it appears that the husband in this case has by an ante-nuptial contract duly executed and recorded, declared his settled intention not to reduce the slaves of his wife to his possession during her life, or to assert his marital rights, and it is not pretended that during the life of his wife he ever did or said any thing in conflict with this declared intention. "Between *husband and wife*, his possession may be qualified by his *intention*, and the ownership follows his *will*." Andrews & Bro. v. Jones, 10 Ala. Rep. 422, 423.

10. It is important to observe in this case, that at the mar-

riage the slaves belonged to the estate of the former husband of the defendant's wife; that she was the residuary legatee of her former husband, that the executor had not at her marriage with defendant, assented to the legacy, that it is distinctly stated in the ante-nuptial contract,- that the slaves belonged to the estate of said former husband, and that the slaves were mere choses in action at that time, that *the legal title* to them was then in the executor of Neal and remained so, long after the marriage and until the final settlement of Neal's estate in 1843. Property of this kind could not possibly vest in the husband before the final settlement. When the ante-nuptial contract is construed with reference to these facts, it must be understood as a plain engagement by the husband that *the title should never vest in him as husband.* 3 Howard's Rep. 634, Supra.; 9 Porter, 644, Supra.; 3 Dessausure's Rep. 156; 2 McCord's Ch. Rep. 433; 6 Gill & Johns. 349; 6 How. U. S. Rep. 78.

11. In Maryland and New York, and all other States which adopt the English decisions founded on 29 Ch. 2, c. 3, § 25, a *suspension* of the marital rights of the husband *during the life of the wife*, does not deprive the *surviving* husband of his right to his wife's property and his right to administer upon her estate after her death. Ward v. Thompson, 6 Gill & Johns. Rep. 349, and cases cited on page 352.

But according to the law and decisions of Alabama, as well as the common law, a suspension of the marital rights " during the life of the wife," is equivalent to " an entire abandonment " of such rights. The rule here is fixed, that unless the marital rights attach during the life of the wife, they can never attach, and they can never attach until the husband, during the life of the wife, acquires possession of the property as husband. Randall v. Shrader, 17 Ala. Rep.; 5 Missouri Rep. 193; 10 Missouri Rep. 368.

In Tennessee the decisions founded on the English Statute of 29 Ch. 2, are held to be law, giving the husband as survivor the choses in action and property of the wife, whether reduced to possession or not; it is- held that when the marriage settlement makes no disposition of the property in the event of the wife's death, the right of the husband " as survivor," is clear. But it is not pretended that he has any

right by remainder, or in any other way than as survivor. And this right of survivorship is created by statute. Brown v. Brown, 6 Humph. 127; Stewart v. Stewart, 7 Johns. Ch. Rep. 243; 1 Rice's Eq. Rep. 315.

The cases cited from the Mississippi Reports, and others, by the defendant's counsel, are not binding in Alabama; because they are based upon the New York and English cases, which are founded on the English Statute of 29 Ch. 2, c. 3, § 25; and because all such decisions are directly opposed to the Alabama decisions and to the common law.

WHITE & PARSONS, for defendant in error:

1. By the marriage, the husband becomes a purchaser, for a valuable consideration, of all the wife's personal property and choses in action, and the title to such as are reduced to possession during the coverture, vests in him absolutely. Andrews & Bro. v. Jones et al. 10 Ala. 400; Brown v Brown, 6 Humph. 127; 3 Hen. & M. 399; 1 Roper on Property, 169; Stewart v. Stewart, 7 John. Chy. 245.

2. That this marriage contract did not become operative until the marriage took place. 2 Story's Eq. § 1379. It could not become operative before that event, because until that event took place, it is not pretended that Shrader had any interest in the property.

3. The law favors the marital rights of the husband, and will not consider them interfered with by any disposition of property for the wife's benefit, unless there is a *clear exclusion* of his interest and control. 8 Por. 73; 15 Ala. 173; 15 ib. 122; Atherly on Marriage Settlements, 25; and this intention must appear "*beyond a reasonable doubt*, or otherwise he will retain his ordinary legal and marital rights over it." 2 Story's Eq. § 1381; 3 Vesey, 166, and Lamb v. Milnes, 5 ib. 520.

4. When the wife's *separate estate is for life only*, "she holds the remainder, not to her separate use, but by virtue of the power, and as she would take any other property, *subject to the claims of her husband upon it.*" Clancy's Husband and Wife, 296. The Lord Chancellor said, "It was *well settled* in the cases alluded to by Mr. Romilly, *and many others*, that where there is an express limitation for life, with a power to

dispose *by will*, the interest is equivalent only to an estate for life," 10 Vesey, 378. The cases referred to by Mr. Romilly are in 3 Leonard, 71, and 4 ib. 41 ; 13 Vesey, 452 ; Roper on Husband and Wife, 201, and the cases cited in the notes. And this distinction between a power to dispose by *will*, and by *deed or will*, was expressly recognized in the case of Bareford v. Street, 16 Vesey, 135. And Irwin v. Faner, 19 Vesey, 85, was decided upon the authority of Bareford v. Street, Supra, and Tomlinson v. Dighton, 1 Pr. W. 149, and rests upon the ground that the neice of Mary Smart could appoint "by will or *otherwise*," and therefore does not conflict with the authorities we rely on.

We must, therefore, come to the conclusion that she took a separate estate for life, and he the remainder. 1 John. Chy. 532, and cases cited ; Stewart v. Stewart, 7 John. Chy. 245, 246, 249 ; 6 Humph. 127 ; 7 S. & M. 488 ; 6 Gill & John. 349 ; 6 How. U. S. 70 ; 17 Conn. 201 ; 10 Yerger, 222.

By the terms of this contract, the parties declare their intention, they are " *desirous* to secure to the said Frances Neal *during her life*, the control," &c. The terms of the agreement do not enlarge the estate ; they secure the property to her *during her natural* life, to her *sole* management and control, and with the exclusive right to dispose of it at her death.

As to what constitutes a chose in action, see Vanderver v. Alston, 16 Ala ; Hopper v. McWhorter, 18 ib. 229 ; Magee v. Toland, 8 Por. 40 ; 3 Litt. 282–3 ; Pitts v. Curtis, 4 Ala. 350 ; 2 Dev. & Batt. 135.

6. By the marriage the property was conveyed to the husband, and the title was in him, subject to the contract entered into previous to the marriage. For it is too clear to admit of argument, that a conveyance by Henry Shrader, who had no title, to Frances Neal, who had an absolute title, would be a nullity without the subsequent marriage. It is, then, as though Frances Neal had conveyed to Henry Shrader all the title to the property which she had previous to the marriage, which is not embraced by the marriage contract, and it is reduced to this.

What was the estate which was conveyed by the marriage contract ? It was "the control of the property during her life, and the right to dispose of the same at her death." The

words "management and control" cannot imply more than a separate estate, or a title to the property. She then took, by the conveyance of her husband, who had the absolute title, a separate estate in the property *for her life*, and at the termination of her life her estate was *to end by the express letter of the contract.* She had but one right which extended beyond her life, and that was the right to dispose of it at her death. This she did not do. She had the right, but has failed to exercise it. She is dead, and the right, or her right, of disposition is gone, *extinguished.*

LIGON, J.—The only question necessary to be considered in this case is, what estate was secured to Mrs. Shrader by the ante-nuptial agreement between her husband and herself?

In express terms, it gives her a separate estate in the slaves and other property for life, with a general power to dispose of them at her death. In our view, the whole and entire estate passed to her by this agreement, and she was left to enjoy, use, and dispose of the property as though no marriage had ever been consummated, and that, dying without having made any disposition of the slaves, our statute of distributions, as the law stood at the time of her death, gives them to the next of kin of the wife, and not the husband. For this interpretation of the contract see Bareford v. Street, 16 Vesey, 139 ; Imlay v. Huntington, 20 Conn. 169 ; Ewing v. Smith, 3 Eq. Rep. (S. C.) 417 ; Jacques v. Methodist Epis. Church, 17 John. 548.

The whole estate was in Mrs. Shrader before the ante-nuptial agreement was made, and, indeed, up to the time of her marriage with the defendant. He had no right or claim whatever to any portion of the property, and expected none, except such as the law would cast on him by virtue of his marriage. To hinder his marital rights from attaching, he solemnly enters into a deed, by which he covenants that he will not claim or assert them during the life of his wife, and that at her death she shall have the general power to dispose of the slaves. He thus gives the entire estate into her hands, and throws himself on her bounty. She has not thought proper to bestow anything on him, and, under the law, he can take nothing; nor will he be allowed to set up a claim in opposition to his covenant.

It is proper to remark, that since the cause of action arose in this case, our statute of distribution, in certain cases, has been made much more favorable to the husband, by the acts of 1848 and 1850; but these acts can have no influence on this case.

Let the judgment be reversed and the cause remanded.