DENSON ET AL. *vs.* MITCHELL AND WIFE.

1. The words of a devising clause in a will cannot, ordinarily, be carried beyond their just legal import and legitimate meaning, by any supposed general intent to be gathered from the preamble, or introductory part of the will ; and it is only in cases of doubt, where the words of a bequest may, without doing violence to the apparent intent and the rules of law, be construed more ways than one, that resort is had to the introductory part of a will to aid in solving such doubt.

2. An express bequest of an estate for life negatives the intention to give the absolute property, and converts a superadded right of disposition into a mere power.

3. The introductory part of a will was in these words : "I, J. D. being at this time of sound mind, and in full possession of all my mental faculties, and knowing that I have to die, and desirous of leaving this will ", &c., " *desire that my person and property shall, after my death, be disposed of as follows*", &c. In the first seven clauses next succeeding, the testator gave specific bequests of slaves to his several children, giving his sons the absolute property, and limiting the interest of each daughter to a life estate " not subject to the debts of her husband, and after her death to be equally divided among the heirs of her body"; and in the eighth clause he bequeathed to his wife several negroes, all of his household and kitchen furniture, stock of horses, cattle, &c., and plantation tools, " *all of which she is to have and hold during her natural life, and at her death to dispose of at her will and pleasure.*" There was no residuary clause, and no bequest over in default of disposition by the wife : *Held*, that the widow took but a life estate in the property bequeathed by this clause, with power to dispose of the remainder; and she having died intestate, that the property went to the testator's personal representatives, to be by him administered as in cases of intestacy.

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. J. W. LESESNE.

JETHRO DENSON died on the 8th July, 1851, in Barbour county, Alabama, after having made and published his last will and testament, which was attested by three witnesses, and was as follows :

"I, Jethro Denson, being at this time of sound mind, and in full possession of all my mental faculties, and knowing that I have to die, and desirous of leaving this will, and after commending my soul to the mercy and safe-keeping of Almighty God, who gave it, desire that my person and property shall, after my death, be disposed of as follows, to-wit—

" 1. That my body be decently interred by my executors.

" 2. That my executors pay, out of the proceeds of my estate, all my just debts.

" 3. I will and bequeath to my son Matthew Denson my negro man Moses.

" 4. I will and bequeath to my son Archibald J. Denson my negro woman Nancy and her children, provided he takes up his permanent residence in Barbour county, Alabama ; if he does not, then I desire my executors to sell her (Nancy) and her children, at public outcry, to the highest bidder, and

pay over the proceeds of said sale into the hands of Archibald J. Denson, as his part of the estate.

"5. I will and bequeath to my daughter Mary Pitts my negro woman Violet and her children, and one girl named Silvy, to have and to hold during her natural life, not subject to the debts of her husband, and after her death to be equally divided among the heirs of her body.

"6. I will and bequeath to my daughter Nancy Screws my negro woman Mahala and her children, to have and to hold during her natural life, not subject to the debts of her husband, and to be equally divided after her death between the heirs of her body. I also will and bequeath to my daughter Nancy Screws the eighth of a section of land on which she and her husband now reside," (particularly described,) "to have and to hold during her natural life, not subject to the debts of her husband, and after her death to be sold at public outcry, and the proceeds of the sale to be equally divided between the heirs of her body.

"7. I will and bequeath to my daughter Martha Mitchell my negro woman Morning and her children.

"8. I will and bequeath to my wife Rebecca my negro woman known as Little Ferriby, and her children and grandchildren, with the exception of her daughter Nancy. I further will and bequeath to my wife Rebecca negro man George; also a woman known as Big Ferriby, and her three youngest children; also, two negro men, Cupid and Jack; also, a woman known as Old Nancy, and all of my household and kitchen furniture; also, fifteen head of stock cattle, five head of horses, one road wagon, and all of my stock of hogs, plantation tools, and farming utensils; all of which she is to have and hold during her natural life, and at her death to dispose of at her own will and pleasure.

"9. I will and bequeath to my wife Rebecca my three negro men, Charles, Handy, and Joe; also, two girls, Caroline and Chancy; also, my plantation; to have and hold during her natural life, and after her death to be sold at public outcry, and the proceeds of such sale to be equally divided between my children.

"I desire the above to be my last will and testament, and hereby appoint Randolph Mitchell and my wife Rebecca my

executors, and do hereunto affix and sign my name and seal", &c.

Of the testator's children named in this will, all of whom survived him, Martha, the wife of Randolph Mitchell, was the only child of his wife Rebecca; the others being born of a former wife. Mrs. Rebecca Denson afterwards died, to-wit, in January, 1852, intestate; and the slaves and other property bequeathed to her by the testator went into the possession of said Mitchell and wife, who claimed and held them as the separate estate of Mrs. Mitchell, as only heir-at-law of her mother. This bill was filed against them by the testator's other children, who insist that Mrs. Denson took but a life estate in the property; and they pray for an account, distribution, and general relief.

The chancellor dismissed the bill for want of equity, holding, on the authority of Randall v. Shrader, 20 Ala. 338, that the absolute property vested in Mrs. Denson under the eighth clause in the testator's will; and his decree is now assigned for error.

BUFORD & PUGH and JAS. E. BELSER, for the appellants:

1. The importance of the introductory clause and preamble in a will, as manifesting an intention of complete and ultimate disposition, has been gradually declining in courts both of law and equity. "After some fluctuation, it is at length clearly settled, that, although they make profession of disposing of all the testator's property, in the fullest manner, they will not operate to carry the words of the devising clause beyond their legal sense and signification."—1 Roberts on Wills 432-435; Vanderverker v. Vanderverker, 7 Barb. S. C. Rep. 221.

2. Whatever a testator does not grant by his will, remains in him, and reverts to his heirs and distributees, after the dispositions actually made by him are over.—4 Kent's Com. 353, Lecture 53.

3. The extent of the estate given to the widow is express, certain, and clearly defined—"to have and hold during her natural life"; the superadded power, "at her death to dispose of" (the very same property which was granted to her for her life), is a distinct gift, not of an additional interest or estate, but merely of a power to dispose by will and not by writing *inter vivos*. Such a power of disposal, even if it were general,

in connection with an express estate for life so clearly defined, cannot operate by way of enlargement of the life estate into a fee. The implication, to control the technical meaning of words creating a previous express estate, must always be a necessary implication. No such implication arises here.— Caleb v. Field, 9 Dana's R. 346; Pate v. Barrett, 2 *ib*. 426; 16 Johns. 388; Rubey v. Barnett, 12 Misso. 3; 10 Ves. 370; 1 P. Wms. 149; Pulliam v. Byrd, 2 Strob. Eq. 134; Smith v. Hilliard, 3 *ib*. 214; Reith v. Seymour, 4 Russ. 263; 1 Salk. 239; Archibald v. Wright, 9 Sim. 162; 3 Litt. 415; Burwell v. Anderson, 3 Leigh's R. 355; Smith v. Bell, 6 Peters' Rep. 78-9; Ward v. Amory, 1 Curtis' R. 419; Keyes on Chattels, §§ 156 to 170.

"The express estate for life negatives the intention to give the absolute property, and converts these words into words of mere power, which, standing alone, would have been construed to convey an interest." "Where such inconsistent life estate is given, the fee does not pass; for this whole matter rests upon intention."—3 Leigh's R. 356-7, and authorities *supra*.

A. bequeathed a slave to his wife for her life, and after her death to be emancipated : *Held*, that although the provision for the emancipation was void, yet the slave did not belong absolutely to the wife, but, after her death, went to the next of kin, or passed by the residuary clause, if there was one.—Cresswell v. Emberson, 6 Ired. Eq. 151; Vannerson v. Culbertson, 10 Sm. & Marsh. 150; 7 Barb. S. C. Rep. 221. The principle of these cases is, that the testator expressly limits the duration of the estate to the life of the wife, and there is to be no enlargement of that estate by implication.

In a will, the grammatical construction must prevail, unless a contrary intent *plainly* appears.—Love v. Love, 5 Ired. Eq. Rep. 201.

ELMORE & YANCEY, *contra:*

1. The law never favors an intestacy as to any part of the personalty, when there is a will.

2. The general intention apparent in the will must prevail, unless forbidden by law.—Heirs of Capel v. McMillan, 8 Por. 197, and authorities cited on pp. 204-5.

3. To ascertain the intention, every part of the will is ex-

amined and compared, the one with the other.   In a case of
doubt whether an absolute or limited estate is given, the in-
troductory part of the will may be referred to for the purpose
of solving it.—Schriver v. Meyer, (7 Harris,) 19 Penn. 87,
where many of the cases are reviewed ; Wood v. H̶i̶l̶l̶, *ib.* 513.

4. This rule is educed :   Wherever the introduction shows
an intention to dispose of the whole of the testator's property,
and it can be brought down to and connected with the devising
clause, the introductory and devising clauses are construed
together, and the interest devised thereby is an absolute one.
19 Penn. 87; 14 S. & R. 95; 10 Wheat. 204; 19 Penn. 513.

5. The property in the eighth clause of the will passed to
the wife absolutely.   1st. A bequest of personalty for life,
with a general power of disposition, not limited as to the objects
or mode, gives the absolute estate.—Randall v. Shrader, 20 Ala.
338, and cases cited in the opinion ; 2 Wilson 6; 3 Ves. 299;
1 Leon. 256 ; 2 Ves. 588 ; 2 Atk. 102; 1 Wash. (Va.) 266 ;
10 Mod. 71; 16 Ves. 135; 19 *ib.* 85.   2d. The intention of
the testator was, to bestow this property absolutely on his
wife.   The introduction clearly shows an intention to dispose
of "his property" (that is, of all his property) "as follows"
(that is, as the same is given in the following nine clauses) ;
and this necessarily connects the introductory and devising
clauses, and of course the eighth is connected with the intro-
duction.   The language and meaning of these clauses is, then,
that he desires his property in the subjects named in the eighth
clause to be disposed of as follows, &c.

Again ;  looking at these and the other parts of the will,
the variety of bequests and variety of limitations on the other
bequests, and the variance between the limitations in the
eighth and ninth clauses, the inference is plain—" such as will
satisfy the conscience of the court "—that the object of the
testator was to dispose of all his property, and to dispose of
all his interest in the subjects mentioned in that clause.   The
eighth clause is by the terms of the introduction as much con-
nected with it as the first clause is.   This being the intention,
the court will carry it into effect, as there is no prohibition of
law against it.

The question is one of intention.   We admit, when the
limitation is for life, with a power of disposition, and the ex-

ercise of this power is restrained either as to the objects in whose favor it is to be exercised, or as to the manner in which it shall be exercised, the intention is apparent that this is but a power, and not an interest. Or, if there was a limitation over, in default of the appointment or exercise of the power, then, also, this is evidence that the power should not be an interest, but an authority merely. On this view most of the conflicting decisions may be reconciled.—1 Sugd. on Powers, mar. p. 127. We claim, however, the benefit of the converse of these propositions—that when there is no limitation over on default of appointment, and no restriction as to the objects or mode of exercise of the power, this is evidence of the intention to dispose of the property absolutely.

6. The words "at her death", following the words "during her life", are equivalent to " then", and will be considered as words of relation, and not of time; and that the remainder of the estate was to be disposed of at her will and pleasure; and that such disposition was to take effect at her death, and not that she was at the moment of her death to have the power of disposition; for that would mean after her death, which is impossible.—Tomlinson v. Dighton, 10 Mod. 71; Boraston's case, 3 Coke 21-2.

7. When a general power of disposition is reserved or given of property or a fund, in which the person having the power has no present interest, and can have none until a future event, as his death, the property or fund becomes his absolute estate on the happening of the event, without any exercise of the power.—3 Atk. 269; 2 Vern. 181; 3 Atk. 656; 1 Vesey 267; 2 Atk. 172; 3 Leigh 348; 12 Miss. 3.

The principle of these decisions is, that he who has such a power of disposition has all the attributes of ownership over the property at the time the interest is to take effect if the power was exercised; and we assent to this as sound sense and law. Mrs. Denson had an estate for life, with the unlimited power to dispose of the property at her death. Has she less of the attributes of ownership, than if she had been vested with the power of disposition at her death? Has she a less interest in the remainder, than if it had been to the children of Denson for the life of the wife, and at her death to be at her disposition? Yet this is admitted by all the authorities

to vest the absolute estate in her at her death. The particular estate, and the power of disposition, are the same in both the above suppositions. The only difference is, in fact, the particular estate is to be enjoyed by different persons.

These cases assert the following doctrine : "Where there is a particular limited interest, and this sort of power, liberty or authority, though the latter without a particular partial interest pointed out might have amounted to an absolute gift, yet when both occur, the gift is held to be of the limited interest, and the other to be but a power, and not an interest."

To analyze this : When a limited interest is given, with an unlimited power of disposition, the limitation of the interest is a limitation of the power. But if no "particular partial interest had been pointed out", but there had been a general interest pointed out, or no interest pointed out, then the power "might have amounted to an absolute gift "; and these seem to have been adopted by American authorities as sound reasoning. We think there are two errors in it : first, if there had been a general interest pointed out or given, the power was unnecessary, and could not enlarge the estate ; and, second, the power is limited by the particular estate, and not the estate by the power. The power succeeding the mention of the property given is the limitation of the interest. How would it be, if in his will he gave to his wife the unlimited power of disposition at her death, and gave to his children during her life the enjoyment of the property, and by a codicil had confirmed this will in all respects, save that he altered the estate for life from his children and gave it to his wife ; or by will gave the property to his wife for life, and at her death to his children, and by a codicil revoked the gift of the remainder to his children, and gave to his wife the unlimited power of disposition at her death ; can it be doubted what must be the construction put upon the will ? There is no difference in the cases, as to the legal effect. There is no limitation over in the will on default of appointment ; and the children, not being named, stand precisely in the condition of the hypothesis, where the limitation of the remainder to them was revoked by the codicil.

The rule in the above authorities is one of construction only. They say, such an interest being limited is evidence

that the testator did not mean the power to be an interest, but an authority merely. But if, from the other parts of the will, or the peculiar phraseology, it appears the testator did intend this power as an interest, then these cases are of no authority, and the court will carry the intention into effect.

These cases hold, further, that if the testator give the property for life, with directions to sell at the death, and with a power to the tenant for life to dispose of the proceeds of the sale, the tenant for life takes an absolute estate in the whole proceeds.—1 Vesey 267; 3 Leigh 348. It is inconceivable how a bequest for life, with power to dispose of the proceeds when sold at her death, is an absolute estate, while a power to dispose of the property itself is a mere authority. It is a distinction without a difference; and the cases lose their weight as authority.

8. The negroes mentioned in the first sentence of the eighth clause were given absolutely. The two bequests in this clause are disjoined, and the first is given without any limitation.—4 McCord 60; 2 Strob. Eq. 327; Doug. 730; 8 D. & East 64.

Most of the cases cited by the appellants are cases in which there was either no power of disposition, or there was a limitation over, or the power was limited as to the objects or the mode of exercise.

Randall v. Shrader, 20 Ala. 338, is identical with the present case; the difference, if any, being in favor of the present case, as it is a will. The question in that case was, what interest did the wife take under the instrument? On the face of the writing, it was held, she took an absolute estate. The construction put on that deed and on this will must be the same. What interest did Mrs. Denson take under this will? The provisions in the will and deed are, in legal effect, and almost in language, the same. The decision was a correct one, and commends itself to the good sense of every mind, legal or otherwise.

On the question of intention: Lands to a devisee, to be by him freely possessed and enjoyed, passed the absolute estate, although no words of inheritance were added, without which it was but a life estate; but the intention was upheld.—1 S. & R. 144; 12 ib. 54.

CHILTON, C. J.—The leading object in the construction of every written instrument is, to arrive at the true intent and meaning of the parties to it; and if the courts can give effect to such intention consistently with the rules of law, they will do so. In the construction of wills, especially, we must struggle to arrive at the true desire and intent of the testator; and to do this, we should look to the whole instrument—the introduction, preamble, and different items and clauses, and see the bearing of each upon the clause to be construed. At the same time, however, the words of the devising clause cannot be ordinarily carried beyond their just legal import and legitimate meaning, by any supposed general intent to be gathered from the introductory clause or preamble of the will. 1 Roberts on Wills, pp. 432-5. It is only in cases of doubt, where the words of a bequest may be construed more ways than one, without doing violence to the apparent intent and the rules of law, that we resort to the introductory part of the will for the purpose of aid in solving such doubt—19 Penn. 87; *ib.* 513.

We are of opinion, that in the introductory clause of this will there is nothing inconsistent with the possibility of a reversion back to the estate of the testator of the property mentioned in the eighth clause of the will. The language is: "I, Jethro Denson, being", &c., "and desirous of leaving this will", &c., "desire that my person and property shall, after my death, be disposed of as follows, to-wit." Then follow the several clauses, seven in number, making dispositions of portions of his property among his children, vesting life estates in his daughters, with remainders to the heirs of their bodies living at their death, until we come to the eighth, which is the clause we are called upon to construe, and which is in these words: "I will and bequeath to my wife Rebecca my negro woman known as Little Ferriby, and her children and grand-children, with the exception of her daughter Nancy. I further will and bequeath to my wife Rebecca negro man George; also a woman known as Big Ferriby, and her three youngest children; also, two negro men, Cupid and Jack; also, a woman known as Old Nancy, and all of my household and kitchen furniture; also, fifteen head of stock cattle, five head of horses, one road wagon, and all of my stock of hogs, plan-

24

tation tools, and farming utensils ; all of which she is to have and hold during her natural life, and at her death to dispose of at her own will and pleasure."

Taking a common-sense view of this bequest, it would readily occur to the mind, that if the testator intended to vest the absolute property in his wife, he would have given it to her as he did other property to his sons. But he does not do so : when he comes to make provision for her, he expressly limits her interest to a life estate ; and to hold that the absolute property passes in the chattels, is to do violence to the testator's language, and, we think, would contravene his clearly expressed intention.

The superadded right to dispose of the property at her death, at her own will and pleasure, we think, has not the effect of enlarging the precedent gift for life so as to vest the absolute property. Taking the whole will together, and bearing in mind the language employed by the testator when he would create or vest an absolute property, and the peculiar and guarded manner in which this bequest is expressed, we do not entertain a doubt that the testator meant what he said—to give his wife but a *life estate*, and to vest her with power and authority to dispose of the remainder ; and, perhaps reposing with confidence upon the belief that she would execute the power of disposition, he makes no provision as to what shall be done with the remainder in default of appointment. In that event, it goes back to his personal representatives, to be administered as in case of intestacy.

The authorities, both English and American, seem generally agreed in the position, that an *express estate for life*, given by will, negatives the intention to give the absolute property, and converts words conferring a right of disposition into words of mere power. See the authorities, collated with much industry, upon the briefs of the learned counsel.

The case of Randall v. Shrader, 20 Ala. 338, which arose upon an ante-nuptial contract, was a correct decision ; for the husband, by the contract, effectually excluded his marital rights from attaching to the property. True, the reasoning puts the decision upon another ground, and this would seem to conflict with the views above expressed, unless a distinction can be taken between the construction of the clause author-

izing the disposition of the property by the tenant for life, when employed in a will and in a deed. I shall not stop to inquire whether such distinction exists, nor whether the reasoning of that case can be supported. As we have already said, an almost unbroken current of authority, both English and American, as well as the principal text-writers upon this subject, have settled that words of disposition thus superadded, after an express limitation of a life estate, merely confer a power, and not property. Their effect is not, therefore, to enlarge by implication the previous estate; but, upon the death of the life tenant, and in default of appointment, a *quasi* reversion results to the representatives of the testator, or it falls into the residuum, according as the will may direct.

After a careful examination of all the authorities cited, and many which are not found on the briefs, we feel constrained to hold, that the decree of the chancellor is erroneous, and his decree must therefore be reversed, and the cause remanded.