# Whorton, Ex'r, *v.* Moragne *et als.*

## *Settlement of Estate in Probate Court.*

1. *Will; construed.*—A died leaving a will which contains the following clause: "Whereas I have heretofore given to my sons B. B. Whorton and J. M. Whorton, and to my daughters Louisa, (Mary Moragne heirs, eighteen hundred dollars only,) property worth, in my estimation, two thousand dollars each. Now I will and devise that my wife Elizabeth pay to each of my other children the said amount of two thousand dollars each, as they become of age or marry, and to the heirs of Mary Moragne two hundred dollars to make them equal. And I further will and bequeath any property remaining after the decease of my wife, of all kinds and descriptions, to be equally divided between my children, share and share, equal and alike." Appellant and the widow of testator were appointed and qualified as executors of his will. Soon after his death the whole of his realty, and the bulk of his personalty, passed into the possession and exclusive control of his wife, who retained the same until her death, some fourteen years afterwards, paying off the legacies, charges upon his estate by the will. After her death, the appellant, as surviving executor, took possession of the property, and, under orders of the probate court, sold it for division.

*Held:* 1. That under this will the wife of the testator took the absolute property in the estate, real and personal.

2. That after the death of the wife, the appellant was without authority to sell the land or personalty; and that orders of sale for division made by the probate court on his application as executor, were invalid, conferring on that court no power to hold him accountable as executor for moneys arising from sales made under such orders.

2. *Settlements of executors; jurisdiction of probate court over.*—As to the settlement of the accounts of an executor, the jurisdiction of the court of probate

[Whorton, Ex'r, v. Moragne et als.]

is purely statutory, and in its exercise the court is regarded as an inferior court of limited and statutory, not of general jurisdiction.

3.  *Jurisdiction of court; when open to inquiry.*—The jurisdiction of a court over the subject matter, is at all times open to inquiry, either on appeal or when the judgment rendered is collaterally assailed; and no consent, laches, or solicitation of the parties can cure such a defect.

4.  *Sale of personal property of decedent; jurisdiction of probate court to order, on application of executor.*—The court of probate has no jurisdiction to order a sale of personal property at the instance of a personal representative, unless the title in him, which devolved upon him at the death of his testator or intestate, still remains in him.

5.  *Legacy; assent to by executor, how may be shown.*—The law does not require that the assent of the executor to a legacy be given in any particular form ; it may be expressed in words, accompanied by a delivery of the thing bequeathed,' or it may be implied from conduct consistent only with an intention to surrender to the legatee the title and control; and where the property devised is allowed by the executors to remain in the undisturbed possession of the legatee, who is also one of the executors for thirteen years, the presumption of assent will be made.

7.  *Probate Court; jurisdiction to order sale of lands of decedent for division on application of executor.*—The jurisdiction of the court of probate to order a sale of lands on the application of a personal representative is statutory and limited, and when the ground of jurisdiction is a necessity for a division among heirs or devisees, the condition of the lands as to title must remain the same as it was at the death of the testator or intestate.

7.  *Same; when without jurisdiction to make order for sale of lands devised.* Where, by the will, the testator devised his lands and the executors assented to the legacy, the Probate Court is without jurisdiction on the application of the executor to render orders of sale for the purpose of divisions, or to hold the executor responsible for money received from the sale of lands made under such orders.

APPEAL from St Clair Circuit Court.
Tried before Hon. E. J. ROBINSON.
The opinion states the case.

AIKEN & MARTIN, for appellant.

INZER & ELLIS, *contra.*

No briefs came to the Reporter's hands.

BRICKELL, C. J.—This was a proceeding for a final settlement of the accounts and vouchers of the appellant, as surviving executor of the will of William Whorton, deceased. The bequests and devises in the will of the testator, are as follows :   " Of the earthly goods of which it pleased Providence to entrust me with, I wish the following disposition to be made, after paying all my just debts, to-wit :   Whereas, I have heretofore given to my sons Benjamin B. Whorton, and James Martin Whorton, and to my daughters Louisa, (Mary Moragne heirs, eighteen hundred dollars only,) property worth, in my estimation, two thousand dollars each.   Now, I will and devise that my wife, Elizabeth, pay to each of my other

children, Richard, Pinkney, Elizabeth, and Martin Van Buren, the said amount of two thousand dollars each, as they become of age or marry, and to the heirs of Mary Moragne, two hundred dollars, to make them all equal. And I further will and bequeath any property remaining after the decease of my wife Elizabeth, of all kinds and descriptions, to be equally divided between my said children, Benjamin B., James M., Richard, Pinkney, Martin Van Buren, Louisa, Catherine, (the heirs of Mary Moragne,) and Elizabeth, share and share, equal and alike." The appellant, his brother-in-law, Isaac Green, and Elizabeth, the widow of testator, were nominated and appointed executors and executrix, the appellant and the widow alone qualifying. The testator died, and the will was admitted to probate in 1850, letters testamentary then issuing. The lands, slaves, and the great bulk of the personal property, passed into the exclusive possession of the widow, and remained in her possession until her death in 1863. She paid to Richard, Pinkney, Elizabeth, and Martin Van Buren, as directed by the will, the sum of two thousand dollars each, to equalize them with the children the testator had in his life advanced. She did not pay to the heirs of Mary Moragne the sum of two hundred dollars, as directed by the will. After her death the appellant, as surviving executor, took possession of the lands and the personal property remaining, and obtained from the court of probate orders to sell the same to effect a division and distribution among and between the remaindermen. On this settlement he was charged with the proceeds of such sales, and credits were allowed him for various disbursements from such proceeds. The charges embrace moneys, it is averred, could have been collected by him, with reasonable diligence, as well as moneys actually received, and several items of credit claimed by him were disallowed or materially reduced. A large balance was found in his hands, from which the court decreed that the two hundred dollars the widow was directed to pay the heirs of Mary Moragne, should be paid to them by the appellant, and the remainder was distributed according to the terms of the will. The appellant reserved exceptions to the rulings of the court of probate, which are now assigned as error.

The several constitutions of the State, in the same terms, have imposed on the General Assembly the duty of establishing in each county "a court of probate, for the granting of letters testamentary and of administration, and for orphans' business." The courts in each county exercising this jurisdiction under territorial statutes, at the adoption of the constitution of 1819, known and designated as the

[Whorton, Ex'r, v. Moragne et als.]

"orphans court," and the "county court," and the present court of probate succeeding to the jurisdiction under the act of the General Assembly passed at the session of 1849–50, have by virtue of this constitutional provision been esteemed and declared, courts of general jurisdiction as to the particular subject-matter, *the grant of letters testamentary and of administration.* What may be comprehended under the term *orphans' business,* has not been defined with precision by judicial decision.—*Ikelheimer v. Chapman,* 32 Ala. 676; *Gray v. Cruise,* 36 Ala. 559; *Coltart v. Allen,* 40 Ala. 155. In addition to this jurisdiction, derived from the constitution, the court has by statute been invested with jurisdiction, on the application of the executor or administrator, to order sales of personal property, or of real estate, when necessary for the payment of debts, or to effect an equal division between the next of kin, heirs, or devisees. And also, with jurisdiction over the settlement of the accounts and vouchers of executors and administrators, the rendition of decrees against them, which may be enforced by execution against them and the sureties on their official bonds. This jurisdiction is derived wholly from statutes, and in its exercise the court is deemed an inferior court of limited and statutory, not of general jurisdiction. The general principle of the common law in respect to the jurisdiction of courts, has been uniformly, and it may be sometimes too rigorously applied to the records of the court in the exercise of this branch of its jurisdiction, "that nothing be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged." Or, as the principle is stated by Bacon: "Inferior courts are bound, in their original creation, to causes arising within such limited jurisdiction; hence it is necessary for them to set forth their authority; for nothing shall be intended within the jurisdiction of an inferior court, but what is expressly alleged to be so."—2 Bacon Ab. 630. That the court must keep within the bounds of the jurisdiction as it is defined and limited by the statutes conferring it, is axiomatic. The preservation of the right, the ease and quiet of the citizen, the orderly administration of justice, are all promoted "when every thing runs in its right channel according to the original jurisdiction of every court; for by the same reason that one court might be allowed to encroach, another might; which could produce nothing but confusion and disorder in the administration of justice."

The jurisdiction of the court of probate to order the sales of the personal and real property on the application of the appellant as executor, and his liability to account therefor in that capacity, in that court, does not appear to have been

presented directly for the adjudication of the court of probate, nor has it been presented by the arguments of counsel in this court. The rule of practice is, not to notice in civil cases, errors which are not insisted on in argument—they are regarded as waived. So the rule is, not to consider questions which have not been directly presented to the primary court. These rules are not applicable, and can not be applied to an inquiry as to the jurisdiction of the primary court over the subject matter. If the record discloses that the court is without jurisdiction of the subject-matter, that it lies within the cognizance of other tribunals, no consent, solicitation, or laches of the parties, can preclude the inquiry or give validity to the proceedings, or the judgment founded on them. When this jurisdiction exists, whatever of error or irregularity may intervene, the parties are competent to waive, and it is but a just presumption that they intend to waive it, when they do not insist upon it. While the court is within the pale of its jurisdiction, it would be unsafe, and unjust to the parties, for an appellate court to reverse its judgment upon questions which were not presented to it for decision, and which if they had been presented, other facts and circumstances than are shown, it may be could have been shown, which would render the question immaterial. However this may be, such questions have not entered into the judgment, and are not permitted to be raised first on appeal. The inquiry as to the jurisdiction of the court over the subject-matter, is at all times necessarily open, either on error, or when the judgment is collaterally assailed. The affirmance of the judgment by the appellate tribunal could not impart validity to it, if the law had not granted jurisdiction to the primary court; and it would be vain for the court to reverse and remand the cause to a court having no jurisdiction to decide the litigation, to declare and fix the rights of the parties, or to render any judgment which would bind them.

The court of probate is without jurisdiction to order the sale of personal property, at the instance of the personal representative, unless the title to it resides in him. By operation of law, the title of the testator or intestate to personal property, immediately on his death, devolves on his personal representative—the grant of letters testamentary, or of administration, though subsequent in point of time, having relation to his death. It is this property, and this property only, which the court can order sold. Such is the language of the statutes, and such would be necessarily their construction, if the language was less explicit, for it can not be supposed that it was intended the court should order the

personal representative to sell property, when he was incapable of making title to it. The title may be legal or equitable—it may comprehend the entire, or a merely qualified interest, but there must be a title in the personal representative, derived from the testator or intestate by operation of law and continuing in him.

The personal property sold by the appellant as executor, was bequeathed by the will of the testator either to Mrs. Whorton for life, with remainder to the testator's children on her death, or to her absolutely. The legal title to it devolving on the executor and executrix, the title of the legatee was imperfect, inchoate, until the bequest was assented to by them. When the assent was given, their legal title was divested, and that of the legatee perfected. The law does not require that the assent shall be given in any particular form—it may be expressed in words, accompanied by a delivery of the thing bequeathed, or it may be implied from conduct consistent only with an intention to surrender to the legatee the title and control. For thirteen years the personal property remained in the exclusive possession of Mrs. Whorton, and she discharged all, except the smallest of the pecuniary legacies, she was by the will charged to pay. From these facts the implication of an assent to the bequest must therefore be made.—*Thrasher v. Ingram*, 32 Ala. 645. No other inference is just or reasonable. Whether she had a life estate only, or the absolute unqualified interest, is not material. If the former, the assent to the gift of the life estate enured to the benefit of the remaindermen, perfecting the title of both; and if the latter, her absolute title was perfected.—*Thrasher v. Ingram, supra; Quacunque via data;* the title of the appellant as executor was divested, and he was without authority over the property. The assent of the personal representative to a bequest is a mere perfecting act, and when once given can not be subsequently revoked or retracted, so as to restore the title the law had devolved upon him. 2 Lomax Ex'rs. 230–243. When, therefore, the court of probate ordered the appellant to make sale of the property, it passed beyond the bounds of its jurisdiction; it ordered the sale of property to which the appellant, as executor, had no title and over which he had in that capacity no authority. The order and sale were, consequently, void; and the proceeds of sales the appellant may have received were not assets, but were moneys held by him for the use of those having the title, if they elected to ratify the sales—an election, which it is scarcely necessary to say could not be manifested in this proceeding, or in the court of probate.

While the general rule is, that an assent to the particular

gift, is an assent to the gift in remainder, there is an exception, if on the expiration of the particular gift, the executor is charged with the duty of disposing of the thing bequeathed for the benefit of the remaindermen.—2 Lomax Ex'rs, 233. The will directs that, on the death of Mrs. Whorton, the property remaining be equally divided among the testator's children. The duty of making the division is not, however, imposed on the executors, and the direction merely imports the quantum of interest the testator intended the children to take severally. If we could find in the will, the gift of a particular estate, and of a remainder, this direction not imposing a duty on the executors, would not aid the jurisdiction the court of probate has exercised, nor render the appellant accountable as executor, for an administration of the property.—*Almond v. Mason*, 9 Grat. 700 ; *Frazer v. Bevill*, 11 Grat. 9. An administrator or an executor may, by color of his trust, receive money or property to which he is not in his representative capacity entitled ; and any claim he may prefer, to retain it, may be devoid of right and justice ; the court of probate dealing with him only in respect to assets, the law charges him with the duty of administering, can not hold him accountable for it.—*Smith v. Smith*, 13 Ala. 329 ; *Ashnrst v. Ashurst*, ib. 781 ; *Carter v. Hinkle*, ib. 529 ; *Martin v. Williams*, 18 Ala. 190 ; *Pettit v. Pettit*, 32 Ala. 288 ; *Perkins v. Lewis*, 41 Ala. 649. The court of probate consequently erred in assuming to charge the appellant in respect to this property, or crediting him with moneys expended in reference to it.

The jurisdiction of the court of probate to order a sale of lands on the application of the executor or administrator, is statutory and limited. When the ground of jurisdiction is, a necessity for a division or distribution between heirs or devisees, the lands must remain in the same condition as to title, as they were at the death of the testator or intestate.— *McCain v. McCain*, 12 Ala. 510 ; *Mounger v. Burks*, 17 Ala. 48 ; *Pettit v. Pettit*, 32 Ala. 288. At the common law the authority and duty of an administrator extended only to personal assets. Lands descended immediately on the death of the ancestor to the heir, who was invested with the title and all its incidents. The title of an executor, if there was no devise of the lands to him, and no power over them conferred by the will of the testator, was also confined to the personal assets. Lands devised passed immediately on the death of the testator to the devisee. These common law principles have been modified in their operation, but not abrogated by the statutes, which confer on the administrator or executor power to rent the lands, or to obtain orders from

the court of probate for the sale of them, when necessary for
the payment of debts, or to effect equality of distribution
between the heirs or the devisees.   The descent to the heir
is not intercepted—he does not trace his title to the lands
from or through the personal representative, nor is his right
of entry or possession lessened, until the personal represent-
ative asserts and exercises the statutory power.   And it is
only by an assertion and exercise of the power, that the ope-
ration and effect of the devise can be interrupted.—*Leavens v.
Butler*, 8 Port. 380 ; *Masterson v. Girard*, 10 Ala. 60 ; *Chig-
hiziola v. LeBaron*, 21 Ala. 406.   If the heir or the devisee
enters, it is subject to the exercise by the executor or admin-
istrator of the statutory power to rent or sell, when renting
or a sale may be necessary for the payment of debts.   What-
ever may be the necessity, the heir or devisee is entitled to
enter and take the rents and profits, until the personal rep-
resentative asserts and exercises the power, in the mode pre-
scribed by the statutes, or by actual notice to the tenant in
possession indicates his purpose to exercise it.—*Masterson v.
Girard, supra ; Fry v. Br. Bk. Mobile*, 23 Ala. 771.   The
statutes confer in general terms on the court of probate, juris-
diction, on the application of the executor or administrator,
to order a sale of lands, "when the same can not be equita-
bly divided amongst the heirs or devisees."—Code of 1875,
§ 2249.   This is a substantial re-enactment of the former
statute of 1822, (Clay's Dig. 224, § 16,) which, as we have
seen, was construed not to embrace lands, the title to which
did not remain in the same condition it was at the death of
the testator or intestate.   There are obviously many difficul-
ties, and it would produce much incongruity, if the statute
was applied to the sale of an estate in remainder, on the
expiration of the particular estate, when the executor was
not by the will charged with the power or duty of effecting a
division or distribution among the remainder men.   The
particular estate, and the estate in remainder, constitute in
law but one estate.   The remainderman is seized of his
remainder at the same time that the tenant of the particular
estate is possessed of his estate.—4 Kent, 261–2.   When the
tenant of the particular estate enters, (a sale of the lands for
the payment of debts not being necessary,) the authority of
the executor over them, or rather the authority he could
assert, can not be called into exercise without affecting the
unity of the estate.   We do not, however, regard that ques-
tion as now involved.   Though the will contains no gift or
devise to Mrs. Whorton in express words, the necessary
implication from its terms, is that she takes a fee, and an

unqualified power of disposition, to which a remainder over on her death would be repugnant.

The maxim of the common law is, that the heir at law can be disinherited only by express devise, or by necessary implication. The statutes of distribution, designating with as much certainty who shall succeed to personal property not disposed of by will, as did the common law, who should as heir succeed to the real estate, the maxim is as applicable here to personal as to real property.—*Denson v. Autry*, 21 Ala. 205. The law and the title it confers, must prevail, unless there is a devise or gift taking its place. Another maxim of the common law was, that if there were no words of inheritance or of limitation to a devise, the devisee had a life estate only, unless from the language used or from other parts of the will a plain intention to give a larger estate could be collected. The practical application of this maxim, the courts declared, more often defeated than it executed the intention of the testator. Yet as descent was the general rule of law, and devise the exception, it could not be departed from until it was superseded by legislative enactment. Early in our legislative history it was abrogated by the statute of 1812, (Clay's Dig. 156, § 33,) now forming § 2178 of the Code of 1876, which declares: "Every estate in lands is to be taken as a fee simple, although the words necessary to create an estate of inheritance are not used, unless it clearly appears that a less estate was intended."

Greater liberality of construction of devises and of wills, is necessarily indulged, than of deeds or other instruments which transfer the title to property, real or personal. They are often drawn most unskillfully, in the absence of counsel, and are confused, or loose and inaccurate in expression. So much depends on the words, arrangement, and circumstances of each particular instrument, that it was said more than two centuries ago, *that cases upon wills had no brothers.* The authority of decisions as to the interpretation of wills, so far as they may be applied to the particular instrument, can not, however, be disregarded without unsettling the titles to property. The object of all construction, is to ascertain the intention of the testator, and however inartificially or inaccurately it may be expressed, when ascertained, it must prevail if not inconsistent with the law. It is said by Blackstone, "by a will alone an estate may pass by mere implication, without any express words to direct its course."—2 Black. 381. The spirit rather than the mere letter of the will, the law regards. Not that upon mere conjecture, words can be added which the testator has not used, but from the words actually employed, the general intent may be inferred,

(14)

[Whorton, Ex'r, v. Moragne et als.]

though it is not particularly expressed. In *Chapman v.  Brown*, 3 Burr. 1634, it was said by Lord Mansfield, "A court of justice may construe a will, and from what is expressed necessarily imply an intent, not particularly specified in words; but we can not, from arbitrary conjecture, though founded upon the highest degree of probability, add to a will or supply the omissions. If words are rejected or supplied by construction, it must always be in support of the manifest intent. The constant object of construction is to attain the intent; for this purpose words of limitation shall operate as words of purchase; implications shall supply the place of verbal omissions; the letter shall give way; every inaccuracy of grammar, every impropriety of terms, shall be corrected by the general meaning, if that be clear and manifest." A devise or bequest, implied from necessity, not a natural necessity, "but so strong a probability, that an intention to the contrary can not be supposed," upon undoubted authority prevailed in two cases. One was a devise, or a bequest, to the heir, or the next of kin of the testator, at the death of A., an estate for life in A. was implied.—1 Jarman on Wills, 435. Another case, was of an indefinite devise, a devise not accompanied with words of inheritance, or of limitation, passing by its terms, in obedience to the maxim we have noticed, only a life estate, yet if the devisee was personally charged with the payment of the debts of the testator, or with the payment of legacies, or with the payment of a specific sum in gross, without regard to the disparity of the sum charged relatively to the value of the land, the devisee had an estate in fee. The reason was, that if he accepted the devise, he stood in the relation of a purchaser, rather than of a mere recipient of the bounty of the testator, and devises, so far as may be, are construed most beneficially for the devisee. "It is clearly settled in a variety of cases," said the Chief Baron, in *Moor v. Dunn*, 2 Bos. & Pall. 249, which is a leading case on this subject, "that if one devise his estate to another, *paying his debts, or he paying his debts, or paying a sum in gross*, a fee must necessarily pass. because as the devisee is to pay the debts or money in all events, and his interest may cease before he is repaid out of the estate, if it be only an estate for life, he may be a loser, which the testator can not be supposed to have intended. The testator is, therefore, deemed to have devised an interest, which will secure the payment of the debts, or sum in gross by the devisee, without the hazard of loss on his part." (See, also, 2 Jarman on Wills, 125; 4 Kent, 640; 6 Green. Cruise, 274–280, and authorities referred to in text and notes.) This doctrine is now of no practical operation here, as the statute

intervenes when the devise is indefinite, declaring it a fee-simple. The reasons on which it is founded, are nevertheless still of importance, and may control the construction of devises which are vague and uncertain as to the devisee, and the quantum of interest which he takes. There is, as we have said, no express gift or devise to Mrs. Whorton, yet she is personally charged with the payment of pecuniary legacies exceeding six thousand dollars. Though she is nominated an executrix of the will, it is not in the capacity of executrix that she is charged with this burthen and duty. In the application of the common law doctrine, of implying a fee, when the devise was indefinite, because it was burdened with the payment of debts, or legacies, or a specific sum in gross, if the devisee was also appointed executor, the charge was regarded as having relation, not to his duty as executor, but to his character of devisee.—2 Jarman on Wills, 126 ; *Dalton v. Hewen,* 6 Madd. 9. The intention to charge Mrs. Whorton personally, and not as executrix, with the payment of the legacies, is apparent from the words and the structure of the devise. It must be observed, that executorial duties by the will, are confined to the payment of debts, and though Mrs. Whorton is nominated executrix in conjunction with the appellant and Green as executors, the devise to her is after the payment of debts, and on her alone and personally is the duty of paying the legacies charged. It is impossible to presume that the testator intended to impose on her the charge and duty—a charge and duty imposed for the purpose of securing equality to his children whom he had not advanced, with those whom he had advanced—without devising to her an interest in his estate, which would enable her to answer the charge. If there is a gift or devise to her, and she accepts it, she is bound personally for the payment of these legacies, and the liability would survive her death. They are payable at different times, and on the happening of different events, which could not occur at the same time— the arrival at age, or marriage of his several children. A mere life estate to Mrs. Whorton, would not satisfy the purposes of the will. The devise could result, and would result, to her injury, if she had died after accepting the devise, and before she had realized from the use of the estate enough to satisfy the legacies. When it is necessary to satisfy the purposes of a devise, a fee will be implied.— *Goodlitte v. Edmonds,* 7 Durn. & E. 635. This at last was the foundation of the common law implication of a fee, when the devisee was personally charged in respect to the lands devised. The reason and spirit of the law apply to this devise, and the whole scheme of the will, and the purposes of the testator,

[Whorton, Ex'r, v. Moragne et als.]

would be defeated, and Mrs. Whorton stripped of all benefit if it is not construed as passing to her the fee, and not a mere life estate.

It is true generally, that implication is admissible only in the absence of, and not to control an express disposition, whether it is a bequest or a devise.—2 Jarm. Wills, 525. The common law implication of a fee was confined to indefinite devises, and could not enlarge an express estate for life, or an estate tail, whether limited in express terms, or arising constructively by implication from words introducing the devise over.—2 Jarm. on Wills, 126. If there was a mere gift or devise to the next of kin, or to the heir, (and the children of the testator were his next of kin and heirs), at the death of Mrs. Whorton, the law would imply in her a life estate. But that is not the character of the present devise. The gift to the children, is not of the property which remains after the payment of debts, or the death of Mrs. Whorton, but it is of such of that property as may then remain, and obviously such as may remain after she has satisfied the several pecuniary legacies. For the gift is to all the children, and if it was of all the estate Mrs. Whorton took, the purpose of equalizing the children not advanced, with those who had been advanced, would be defeated, if she died ¡before satisfying the legacies. The gift over was intended to operate simply on such of the property as was undisposed of by Mrs. Whorton, at her death, after she had satisfied the legacies, and was not intended to lessen or affect the quality or quantity of interest devised to her. It cannot be doubted that a power of disposition, not in any particular mode, but a general power of disposition, was involved in the devise and gift to Mrs. Whorton. She could by sale, or by mortgage, have raised the moneys to satisfy the legacies. The devise, therefore, so far as this phase of it is concerned, falls within the familiar principle, that a bequest or devise, accompanied with a general power of disposition, carries the absolute and entire property, a less interest not being expressly limited.—*Allen v. White*, 16 Ala. 181; *Flinn v. Davis*, 18 Ala. 132; *Randall v. Shroder*, 20 Ala. 338; *Denson v. Mitchell*, 26 Ala. 360; *Weathers v. Patterson*, 30 Ala. 404; *Alford v. Alford*, 56 Ala. 350. The will became effectual by the death of the testator, and its probate in 1850, before the adoption of the Code of 1852, and is unaffected by any of the provisions of that Code, if these have any bearing on the construction or operation of the will.

We are of the opinion that under the will, Mrs. Whorton had the absolute property in the estate, real and personal. The court of probate was consequently without jurisdiction

to render the orders of sale, under which the appellant, as executor, made the sales, and is without jurisdiction to hold him accountable for the proceeds of such sales, so far as he may have collected them, or so far as by proper diligence he could have collected them. A liability may rest upon the appellant, but it is not a liability as executor, and it is in that capacity only, the court of probate has jurisdiction to hold him accountable. An examination of the various rulings of the court of probate, to which exceptions were reserved, all of which proceed on the hypothesis of a liability as executor, is unnecessary, and would be improper. The result is, the decree must be reversed, and in obedience to the practice which has been pursued in this court, the cause will be remanded for proceedings in accordance with this opinion.