# Wolffe *v.* Loeb.

*Bill in Equity to Quiet Titles—Construction of Will.*

1. *Rule of construction, of a will.*—The cardinal rule, the one above all others—for the construction of wills, is to ascertain the intention of the testator, and to give it effect.

2. *Disinheritance of the heir.*—It is a maxim of the common law that the heir-at-law cannot be disinherited except by express devise, or by necessary implication.

3. *"Controller," not absolute owner.*—When a will provides that the wife of the testator shall be the "sole controller" of his estate, the word "controller," does not imply the power of absolute disposition, but to have the management and authority over it.

4. *Estates by implication.*—Estates by implication are founded on the intent of the testator, as ascertained from the words of the will, and where implications are allowed, they must be necessary, in order to effectuate his intention.

5. *Same.*—A construction in favor of a devise or a bequest by implication should be so strong as that a contrary intention to that imparted cannot be supposed to have existed in the mind of the testator.

Vol. 98.

[Wolffe v. Loeb.]

6. *Appointment of executor; need not be by express nomination.*—The appointment of an executor need not be by express nomination to that office, but may be effected by any word or circumlocution in the will, showing the intention of the testator to commit the charge of his estate, and the rights and duties which ordinarily apply to that office, to some person named in the will.

7. *Void petition for sale of lands.*—A petition for the sale of land for *distribution* under § 3253, as well as for *partition* under § 3237, is fatally defective, and void, which fails to set out the names and interest of all entitled to distribution, as required by § 3239 of Code.

APPEAL from the City Court of Montgomery.

Heard before the Hon. THOMAS M. ARRINGTON.

The bill in this case was filed on the 25th of Feb. 1893, by Carrie J. Loeb and Harriet Loeb, against Lena Wolffe, the surviving wife of Samuel Wolffe, deceased, and their children, and sought to quiet, and confirm the title, of complainants, to a certain lot and storehouse on Commerce street in the City of Montgomery. The bill represented that the complainants were in the quiet and peaceable possession of the property, but that the defendants were reputed to own, and claimed some interest therein, and denied and disputed the title of complainants, so that complainants were greatly hindered in the use of their said property, and by reason of the cloud thus placed upon it they had lost an opportunity of selling it. After making the defendants all parties they were required to set forth and specify whatever title they had or claimed and that the same be inquired into and determined by the Court. The original bill was afterwards amended, setting forth that Samuel Wolffe, deceased, died in 1888; that he left a widow,- Lena Wolffe, and four children, Morris, Bettie, Sophie and Jacob, and that a short time after his death his wife gave birth to a posthumous child, Samuel, son of Samuel Wolffe, deceased. That at the time of his death said Samuel Wolffe and one, Bernard Wolffe, were equal joint owners of said property; that said Samuel Wolffe, left a last will and testament which was duly probated in the Probate Court of Montgomery county, Ala., which instrument is fully set out in the opinion of this Court. It was further shown that in January, 1890, the said Bernard Wolffe, filed his petition in the Probate Court of Montgomery county, praying for a sale of said land on the ground that the same could not be equitably divided among the joint owners thereof; that the petition was granted, and the land sold on the 26th of April, 1890, and the commissioner, H. C. Moses, executed deeds to the purchasers, Bernard Wolffe and Lena Wolffe, upon confirmation of the sale by the Court. The price paid was $21,166.00,

Afterwards, the said Bernard Wolffe and Lena Wolffe, sold and conveyed the property to the complainants. The petition filed in the Probate Court, was made an exhibit to complainant's bill. In that petition it appears that this property was averred to belong jointly to said petitioner, Lena Wolffe and said posthumous child, Samuel, in the following proportions; one-half interest to petitioner, five-twelfths to said Lena Wolffe, and one-twelfth to said Samuel Wolffe. The bill was answered by Jacob Wolffe, Sophie Wolffe and Samuel Wolffe, minors, through their guardian-ad-litem, alleging that Samuel Wolffe, deceased, left a last will and testament, under the terms of which they were entitled, each to one-fifth interest in the undivided half interest in this property belonging to said Samuel Wolffe, dec'd—and declaring said Probate proceedings under which this property had been sold, absolutely void on the ground that said Probate Court, had never acquired jurisdiction to make such sale; that the petition set forth only the name of Samuel Wolffe, omitting to name the other children of Samuel Wolffe, deceased, who were entitled to share in the distribution of said land; and that further, said proceedings, as to the minors, Jacob and Sophie Wolffe, were *res inter alios acta.* The cause was submitted for decree on the pleadings and proof, including the Probate proceedings, which were introduced in evidence in this cause. The Court decreed that the complainants were the owners of the land in controversy, and had a good title thereto; that the defendants had no title, claim or interest whatever, and forever enjoined them from interfering with the title or prosession of complainants. From that decree this appeal is taken by the *guardian ad litem* of said minor children of Samuel Wolffe, deceased—and said decree is here assigned as error.

LESTER C. SMITH, for appellants, filed an exhaustive brief, insisting that the language of Samuel Wolffe's will could be construed only as constituting and appointing his wife, Lena Wolffe, the executrix of his will, with full power to manage and control the said estate, but that there were no words of devise, either expressly, or by necessary implication, in said will, showing any intention on the part of the testator to vest an absolute fee in his wife to the lands in controversy, but that the same passed under the terms of the will to the heirs-at-law of said Samuel Wolffe. A great many authorities were cited to sustain this construction of the will. It was further shown by said counsel for appellants,

that the proceedings in the Probate Court, under which appellees claimed title to the land in controversy, were void for want of jurisdiction in said Probate Court, because the petition therein filed was wanting in the statutory jurisdictional facts, in that said petition did not set out the names of all the heirs-at-law of said Samuel Wolffe, entitled to share in the distribution of the land sold under said proceedings.—Among the authorities cited, were : 2 Will's. Exr. 1078 ; 1 Redfield Wills, 433 ; *Manigault v. Deas,* 1 Baily Eq. 298 ; *Deason v. Autsey,* 21 Ala. 205 ; *Hoxton v. Corse,* 2 Barb. Chy. 596, 522 ; *Denn v. Gaskin,* Corop. 67 ; *Chamberlain v. Taylor,* 105 N. Y. 185 ; Schouler on Wills, § 545 ;  *Coffman v. Heatnote,* 2 Law Reps. Annotated, 848 ; *McConry v. Leek,* 14 N. Y. Eq. 70 ; *Denise v. Denise,* N. J. Eq. 163 ; *Bishop v. McLelland,* 44 N. Y. 450 ; *Courter v. Stagg,* 27 N. J. Eq. 305 ; *Barnett v. Barnett,* 30 N. J. Eq. 595 ; *Rathbone v. Dyckman,* 3 Paige, 9 ; 2 Jarmin Wills, 103, 112 ; Beach on Wills, § 334 ; *Sherrod v. Sherrod,* 38 Ala. 537, 543, 564 ; *Wharton v. Morangue,* 62 Ala. 201, 210 ; *Hollingsworth v. Hollingsworth,* 65 Ala. 321, 327 ; Schouler Exr. § 31 ; *Wood v. Mitcham,* 92 N. Y. 375 ; 4 Kent 535 ; *Quinn v. Hardenbing,* 54 N. Y. 86 ; 1 Mins. Exr. 280 ; Schouler's Exr. § 36 ; *Bayeux v. Bayeux,* 8 Paige, 333 ; *Hambert v. Wurstner,* 22 Hon. 405 ; Perry on Trusts, § 212 ; *Fox v. Storrs,* 75 Ala. 265 ; Also, *Whitman v. Reese,* 59 Ala. 532 ; *McCorkle v. Rhea,* 75 Ala. 213.

TOMPKINS & TROY, for appellees, insisted that by the terms of said Samuel Wolffe's will his wife, Lena Wolffe, was made sole legatee of his estate, with a vested fee-simple title to the lands in controversey ; citing, *Alford v. Alford,* 56 Ala. 352 ; Code of Ala. 1886, § 1824 ; 2 Blackstone, 381 ; *Whorton Exr. v. Moragne,* 62 Ala. 209 ; *Winston v. Jones,* 6 Ala. 550.

HARALSON, J.—In this appeal we are called to construe the following will : "State of Alabama, Montgomery county : Know yea, by these presents, that I have declared made this my last will, that in the event of my death, my wife, Lena Wolffe, shall be the sole controller of all my real estate, my personal property, any stock or bonds, which are assigned to me, or will be by reason of paying up this unpaid installment. All and everything now under the name and firm of B. Wolffe & Brother ; also everything in real and personal property under the style of Wolffe, Abraham & Co., also all the real estate yet under the style of Berg & Wolffe,

such and everything now under the name and style of N. Wolffe & Bro., real estate, personal property, chattel mortgages and everything which I now possess without distinction, I make my wife sole controller just the same as if I was alive, and in order that this will shall not have to come about of any dispute or misconstruction, I declare this will incontestible.

"This my last will, shall be probated after my death, and the property turned over to my wife. Out of this all just debts shall be paid out of the undivided part of all property now in the different above mentioned firms. Signed this the 11th day of June, eighteen hundred and eighty-seven. Sam Wolffe. Witness : E. C. Seligman, Alex. Sternfeldt."

The contention of the appellants, for the construction of this will is, that it created Mrs. Lena Wolffe, the wife of the testator, the trustee or executrix with ample powers, as therein contained, to administer the estate and distribute the same under the statutes of descents and distribution; and the other, that of appellees, is, that under it an absolute estate in fee is devised to said Lena Wolffe. As was aptly said · by her counsel in argument, "there is no half way ground upon which she can stand. There is not a word in the will, if any estate in the realty is vested in her, which would limit it to an estate for years, to an estate for life, to an estate *per autrè vie*, or to any lesser estate. If any estate is vested in her, it must be an estate in fee simple; for, it does not clearly appear from the will that a less estate was intended."—Code, § 1824.

It is a legal truism, that the cardinal rule,—the one above all other rules,—for the construction of a will is, to ascertain the intention of the testator and give it effect. Wills are often drawn by persons very unskilled in the use of language, and are loose and inaccurate in expression, and this will is of that class. But however inartificially or inaccurately expressed a will may be, when the judicial mind is brought to its construction, the effort is to ascertain from the language employed, the surroundings of the testator and the objects of his bounty, what his intentions were in the disposition he has made of his property, and when ascertained, to give effect to that intention, if it is not inconsistent with the law.— *Whorton v. Morangue*, 62 Ala. 209; *Alford v. Alford*, 56 Ala. 352.

Samuel B. Wolffe, we may reasonably infer from the evidence, was in the prime of life, when he executed his will, and when he died. His wife, Lena, was not yet old. At his death, they had four children, all minors, the eldest, seven-

[Wolffe v. Loeb.]

teen years old, and one, Samuel, was born after his decease. According to the ordinary and natural instincts of the human mind and heart, without something to indicate a good reason for a contrary course, a testator thus circumstanced, if he will make a will at all, will make some just and equal provision for his children, and take care that the means of their maintenance and education be not left dependent upon the ·will or disposition of their mother,—of the age this one was. It would probably have occurred to the testator, that at her age, his wife might contract, after his death, another marriage, and if so, and all he had were vested by his will absolutely in her, his children, born in his life time, might in the vicissitudes of fortune, or by some influence to which she might be subjected, be deprived · of inheritance in his estate. He could not have been ignorant of the fact, also, at the time he made his will, that his wife was of the age to bear other children, and he probably knew, before he died, that she was then bearing him an unborn child. As to such as might be born after the execution of his will, he knew also, that in the absence of a provision in the will for such contingency, the birth of such, whether in his life, or afterwards, would work a revocation of his will, so far as to allow such child or children to take the same share of his estate, as if he had died intestate.—Code, § 1955. Without some good grounds to induce it, one would be slow to believe he intended to make discrimination in the bestowment of his generosities in favor of unborn children, over those already born, who were of his household and whose lives had already been interwoven by the ties of parental and filial love with his own.

In this construction, it is pertinent to refer to two of Jarman's rules of construction, having their foundation in natural justice and goodness. 5. That the heir is not to be disinherited without an express devise or necessary implication; such implication importing, not natural necessity, but so strong a probability, that an intention to the contrary can not be supposed ; and 6, that merely negative words are not sufficient to exclude the title of the heir or next of kin. There must be an actual gift to some other object.—2 Jarman on Wills, 2nd Am. Ed., § 525, later Ed. 3 Vol. 704.

In *Denson v. Autrey,* 21 Ala. 209, this court, speaking upon this subject said, "Indeed, to defeat the heirs at law, or the distributee under the contract, the property must be *disposed* of by will, and mere words of exclusion, without a disposition of the property, can not have that effect, for the

property not being devised or bequeathed, the statute then designates who shall take."

In *Banks v. Sherrod*, 52 Ala. 270, the following language in support of the same principle, is employed : "The law, and courts of justice, pursuing its spirit and maxims, have always favored heirs. They are appointed by the law to succeed to the estate of which a valid disposition is not made by will. Plain words are required to disinherit them. Though it may appear the testator did not intend that his heirs or next of kin should take his estate, real or personal, and intended to exclude them from succession to it, yet, if he fails to make a valid devise or gift to another, they will take under the statute of descents and distributions." It is a maxim at common law, that the heir at law can not be disinherited except by express devise or by necessary implication.— *Wharton v. Morangue*, 62 Ala. 209 ; *Haxton v. Corse*, 2 Barb. Chan. 506, 522 ; *Chamberlain v. Taylor*, 105 N. Y. 185 ; Schouler on Wills, § 545.

A careful reading of this will discloses the facts, that there is not a word of gift or devise in it, and nothing from which a gift can be fairly implied, and no charge is made on the wife to pay the legacies, as in *Wharton v. Morangue, supra,* or to pay his debts. The whole estate is left to be disposed of under the statute of descents and distributions, after the payment of the debts. The language is,—after bestowing on his wife the "control" of his entire estate, and having mentioned in what it consisted,—"out of this all just debts shall be paid out of the undivided part of all property now in the different above mentioned firms." The will discloses he had stocks and bonds and personal property, outside of his interest in the several firms mentioned in the will of which he was a member, but it was out of his undivided part of the property in said firms he desired his debts paid, and not out of his stocks, bonds and other personal assets.

The only words in the will, which, according to the contention of appellees, are words of devise and bequest are, "My wife, Lena Wolffe, shall be the sole controller of all my real estate," &c., and "I make my wife sole controller just the same as if I was alive." These latter words do not imply that the wife had control over the property of the testator during his life, but that, after his death, she should have the management of it, as he had, in his life time. Nor do the words, "control" and "controller" imply the power in her to make absolute disposition of the property and use and enjoy it as her own, but to have management and authority over it. Control, means to check, restrain, govern,

Vol. 98.

have under command, and authority over.—*Webster*. To hold in restraint or check, subject to authority, direct, regulate, govern, dominate.—*Century Dictionary*.

The testator, we must presume, understood the meaning of the words give, grant, devise or bestow, as well as he did that of control, and if he had desired to devise or bequeath his wife anything, he would have employed some apt word to effect that intent.

But, can a devise and bequest to Mrs. Wolffe, of the absolute beneficial interest in the property mentioned in the will, be raised by necessary implication from the language of the will?

All estates by implication are founded on the intent of the testator, as ascertained from the words of the will, and where implications are allowed they must be necessary, in order to effectuate this intention.—*McCurry v. Leek*, 14 N. J. Eq. 70.

A construction in favor of a devise or a bequest by implication should be so strong, as that a contrary intention to that imported can not be supposed to have existed in the mind of the testator; and such a construction, it is held, should never be adopted, except in cases where, after careful and full consideration of the whole will, the mind of the court is convinced that the testator intended to make the devise or bequest.—*Dennise v. Dennise*, 37 N. J. Eq. 163; *Bishop v. McClellan*, 44 N. J. Eq. 450; *Jones v. Morgan*, (cited in Fearn on Cont. Rem. Appr. 111 p. 589–90 Opinion of Lord Mansfield); *Post v. Hever*, 33 N. Y. 593; *Rathbone v. Dyckman*, 3 Paige 9.

The implication, as we have said in *Sherrod v. Sherrod*, 38 Ala. 543, must not rest on conjecture; it must be necessary, and so plain as to be irresistible to the mind. If the words of the will as written, construed in their ordinary sense, will make a valid will, then there can be no room for implication. *Wharton v. Moragne, supra; Hollingsworth v. Hollingsworth*, 65 Ala. 327; 2 Jar. on Wills, pp. 103, 102; Beach on Wills, § 334.

Finding, then, no words of gift or devise in the will, and no language from which a gift may be implied, we conclude that the intention of the testator was, that his estate should pass to those entitled and in the manner directed by law in cases of intestacy. The evident object in making a will at all, was to enable his wife to take charge of his interests, as connected with the several firms of which he was a member, and wind them up, endowed with full authority to that end, by his will. The words he employed were as effective to constitute her, *executrix*, as if he had used that word, itself,

[Wolffe v. Loeb.]

in conferring on her, the trusts with which he clothed her in administering his affairs. The appointment of an executor may be by express words or by construction—"by the tenor," as it is termed. The appointment of one to be executor need not be by express nomination to that office, but if by any word or circumlocution in his will, the testator commit the charge of his affairs, and the rights and duties which ordinarily apply to the office of executor, to a party or parties named in the will—as by the word "controller" as used in this will,—it amounts to as much as ordaining and constituting him or them to be his executors.—1 W'ms. on Exe'rs., 280, (239) and note 6; Schouler's Ex'rs., § 36; 1 Sevire on Wills, p. 4, § 2; *Bayeux v. Bayeux,* 3 Paige, 333; *Humbert v. Wurstuer,* 22 Hun. 405.

After the death of Samuel Wolffe, his will was duly probated, but letters testamentary of administration were never issued to any one. On the 14th January, 1890, B. Wolffe filed in the Probate Court of Montgomery county, his petition for a sale for division of the real estate therein described,—which belonged to him and said Samuel Wolffe in his life,—on the ground as averred, that the property could not be equitably divided without a sale.

In this petition he gave the names, ages and residences of the children of said Samuel; and alleged, that by the terms of the will of said Samuel,—made a part of the petition,—he and Lena Wolffe, the widow of said Samuel, and Samuel, the posthumous child, were the joint owners of the property sought to be sold; that petitioner owned 1-2, said Lena 5-12 and said infant, Samuel, 1-12 undivided parts thereof.

The petition fails to set forth the interest of any other of the heirs of said Samuel in the property to be sold. It has been held by us, that all the averments of a petition for *partition* under § 3237 of the Code, as required by § 3239, were applicable to petitions for sale for *distribution,* under § 3253 and must be complied with, in the one as in the other instance; that these averments are jurisdictional and without them, the proceedings are void.—*McCorkle v. Rhea,* 75 Ala. 214; *Ballard v. Johns,* 80 Ala. 32; *Whitlow v. Echols,* 78 Ala. 210; *Whitman v. Reese,* 59 Ala. 532; *Johnson v. Ray,* 67 Ala. 603; Freeman on Void Judgments, p. 33.

Tested by these requirements, the proceedings in the Probate Court for the sale of the land for division are fatally defective, and the decree of sale thereunder, is void and of no effect.

Reversed and remanded.