# Bibb *v.* Hunter.

### *Bill in Equity to establish Trust in Lands.*

1. *Express trust in lands; how created.*—An express trust in lands, resting on an agreement between the parties, can only be created or declared by an instrument in writing, signed by the party creating or declaring it (Code, § 2199), though no particular form of words is necessary; and while an assessment list for taxation, signed by the holder of the legal title, may be an admission on his part that he holds for the benefit of another, it can not operate as the creation or declaration of a trust in any part of the land, within the meaning of the statute.

| 79 | 351 |
| 93 | 141 |
| 93 | 588 |
| 79 | 351 |
| 105 | 267 |
| 79 | 351 |
| 108 | 616 |
| 110 | 432 |
| 79 | 351 |
| 112 | 363 |
| 79 | 351 |
| 120 | 254 |
| 79 | 351 |
| 127 | 626 |

2. *Resulting trust arising from payment of purchase-money.*—To establish a resulting trust in lands, in favor of the person who advanced the purchase-money, while the title was taken in the name of another, it must be shown that the consideration moved from him in the first instance, and as a part of the original transaction; that he furnished the purchase-money, if money was paid, or other thing of value which constituted the consideration, or that the credit (if credit was given) was extended to him.

3. *Same; burden of proof; admissions of grantee.*—The presumption being that the conveyance speaks the truth, the *onus* is on the party who seeks to establish a resulting trust in the lands, to overcome this presumption by evidence full, clear and satisfactory; and the verbal admissions or declarations of the grantee, while admissible as evidence against him, are not sufficient, unless plain and consistent with themselves, or corroborated by circumstances.

4. *Same; testimony of complainant, as to transactions with deceased grantee.*—When a conveyance is taken to the grantee for life, with remainder to certain grandchildren by name, and another grandchild files a bill to establish a resulting trust in his own favor, on account of moneys advanced by him to make the purchase, the complainant may testify to transactions between himself and the deceased grantee (Code, § 3058); but, the bill not being filed until after the death of the grantee, that fact must be considered in weighing such testimony, and renders more stringent the necessity for corroborating circumstances.

5. *Resulting trust in part of lands purchased; variance.*—If the complainant's notes were given, at the time of the original transaction, for the deferred payments of purchase-money, while the cash payment was made by the grantee with his own funds, a resulting trust may be declared in a corresponding aliquot part of the land, although the notes were paid at maturity by the grantee himself; but this relief can not be granted, under a bill which alleges the payment of the entire purchase-money by the complainant, and claims a resulting trust in the entire tract of land.

APPEAL from the City Court of Montgomery, in equity.

Heard before the Hon. Thos. N. Arrington.

The bill in this case was filed on the 5th November, 1884, by Harry Hunter, against Frank Bibb and Harison Bibb, of whom the former was a minor; and sought to establish a trust, in favor of the complainant, in a tract of land containing one hundred and sixty acres, the legal title to which was in the defendants. The land consisted of two eighty-acre parcels, which, together with another eighty-acre parcel, had belonged to the estate of Thos. M. Cowles, deceased; and it was bought in November, 1878, from J. T. Holtzclaw, executor and trustee of the estate, by Edmund Harrison, who was the grandfather of the complainant, and also of the defendants. The agreed price was $1,200, of which $400 was paid in cash; and for the residue, the complainant executed his two promissory notes to said Holtzclaw, payable in one and two years. A bond for titles was executed by Holtzclaw to Harrison, which was not produced in evidence, but which, according to the testimony of the witnesses, was conditioned to make titles to the land to said Harrison, or to any other person by his direction, on pay-

[Bibb v. Hunter.]

ment of the two notes. The notes were not paid at maturity,
as Holtzclaw testified, but were paid by Harrison in the latter
part of the year 1880; and about one year afterwards, at the in-
stance of Harrison, and on his production of the title-bond,
Holtzclaw conveyed eighty acres of the land (not involved in
this suit) to Josiah Morris, and the residue to said Harrison
for life, with remainder at his death to the defendants. This
deed is nowhere set out in the record, but there seems to have
been no dispute as to its terms.

The complainant claimed, and alleged in his bill, that Harri-
son made the purchase as his agent, and for his benefit; that
he advanced to Harrison the $400 used in making the cash pay-
ment, and gave his notes for the deferred payments; that he
afterwards delivered to Harrison $160, to be applied in partial
payment of the notes, and instructed him to apply $100 ad-
ditional, out of wages due to complainant for services rendered;
and that the balance of the purchase-money, as evidenced by
the notes, was paid by Harrison, by agreement between them,
out of the rents collected for the lands, of which Harrison had
the possession and control. An answer to the bill was filed by
the defendants, denying all its material allegations; and they
further insisted, by way of plea, that the alleged agreement
between Harrison and the complainant, if ever made at all,
rested only in parol, and was void under the statute of frauds.

The complainant's own deposition was taken in his behalf,
in which he testified to the facts substantially as stated in the
bill. Objections were filed by the defendants to several por-
tions of his testimony, in which he stated declarations by Har-
rison, and referred to transactions between Harrison and him-
self; but the record does not show that the court acted on them.
The complainant also took the depositions of J. T. Holtzclaw
and J. H. Clisby. Holtzclaw testified, that the contract of
purchase was made by Harrison, who also paid the $400 cash,
while complainant's two notes were taken for the deferred pay-
ments; that Harrison said, at the time, "that he was buying
the land for his grandson, Harry Hunter;" that the notes were
finally paid by Harrison in the fall of 1880, and "he (witness)
then offered to make a deed to Hunter, but Harrison declined
to receive it, saying that he had changed his mind about giving
it to Hunter;" and that the deeds were afterwards executed as
above stated, at the instance and request of Harrison. He fur-
ther testified as follows: "Hunter claimed that he had given
Harrison the money to make the advance payment. Harrison
claimed that he was making the purchase in Hunter's name,
on account of some judgments that were against himself, but
said that he expected to give it to Hunter. I never saw them
together, either at the trade or afterwards, in reference to the

23

[Bibb v. Hunter.]

matter." Clisby, in whose employment Hunter was during the years 1879–80, thus testified : "Col. Harrison stated to me, that he had purchased a piece of land from the trustee of the Cowles estate, which he was going to give to Harry Hunter; that he used $400 of Harry's money towards the payment of it. He drew up the deed to Harry Hunter at my desk, and always spoke of the land as Hunter's. . . When the last payment on the land was due, he asked me to lend him the money to finish paying for it, and said that he had given his deed for 120 acres of the land to Harry, who could execute his mortgage to me, which would be ample security. After I declined to let him have the money, he asked to hold back a sufficient amount of Hunter's monthly salary to meet the last payment on the land; which I also declined to do." The complainant also offered in evidence the assessment returned for the years 1879 and 1880, showing that the land in controversy was returned as the property of Harry Hunter, by Edmund Harrison as his agent. It was admitted, that A. H. Moses and C. Vaughan would swear that the $400, said by the complainant to have been paid by him to Harrison in Vaughan's presence, was paid in March, 1881.

On final hearing, on pleadings and proof, a decree was rendered for the complainant; and this decree is now assigned as error by the defendants. There are also numerous assignments of error based on the refusal of the court to sustain the defendant's objections to testimony.

WATTS & SON, for appellant.—(1.) The complainant was not a competent witness to prove any transaction between himself and Harrison, or any declarations by Harrison. He is within the spirit, if not within the letter of the statute, and it is liberally construed.—*Boykin v. Smith*, 65 Ala. 299 ; *Preston v. McMillan*, 58 Ala. 84 ; *Key v. Jones*, 52 Ala. 247 ; *Bellah v. Stuckey*, 41 Ala. 700 ; *Kumpe v. Coons*, 63 Ala. 448; *Insurance Co. v. Sledge*, 62 Ala. 566; *Dismukes v. Tolston*, 67 Ala. 388 ; *Fort v. Davis*, 67 Ala. 485 ; *Asay v. Hoover*, 5 Penn. St. 21 ; *Killen v. Lide*, 65 Ala. 506 ; *Drew v. Simmons*, 56 Ala. 465. (2.) There is a fatal variance between the allegations and the proof.—*Lehman v. Lewis*, 62 Ala. 129. (3.) A resulting trust does not arise, unless the money of the party asserting it went into the purchase of the land— was used at the time in paying the purchase-money ; and neither the declarations of the party making the purchase, that he is buying for another, nor the subsequent repayment of the money to him, can change the principle.—Sugden on Vendors, vol. 3, p. 180 ; Perry on Trusts. §§ 135, 137 : *Pinnock v. Clough*, 16 Vt. 507 ; *Botsford v. Burr*, 2 John. Ch. 408 ; *Leh-*

[Bibb v. Hunter.]

*man v. Lewis*, 62 Ala. 129; *Crutcher v. Taylor*, 66 Ala. 217;
*Whaley v. Whaley*, 71 Ala. 159; *Kelly v. Karsner*, 72 Ala.
505; *Foster v. Atheneum*, 3 Ala. 309; *Taliaferro v. Taliaferro*,
6 Ala. 404; *Robinson v. Robinson*, 44 Ala. 227; *Steere v. Steere*,
5 John. Ch. 1; *Thompson v. Branch*, 33 Amer. Dec. 153·;
*Dudley v. Bosworth*, 51 Amer. Dec. 692; *Fowke v. Slaughter*,
13 Amer. Dec. 133; *Leman v. Whitley*, 4 Russ. 423; *Smith
v. Burnham*, 3 Sumner, 435; *Neill v. Keese*, 5 Texas, 23;
*Cowan v. Wheeler*, 43 Amer. Dec. 287. (4.) There is no ex-
press trust, nor declaration in writing of a trust.—Code, § 2199;
*Cowan v. Wheeler*, 43 Amer. Dec. 283; *Thompson v. Branch*,
33 Amer. Dec. 153; *Seymour v. Delancey*, 3 Cow. 445; *Cur-
lin v. Hendricks*, 35 Texas, 225; *Anderson v. Greene*, 7 J. J.
Mar. 448.

RICE & WILEY, and SMITH, McDONALD & MARKS, *contra.*
The bill seeks to establish and enforce both an express trust and
a resulting trust in the lands, and the evidence sustains each
feature of the bill. (1.) As evidence of an express trust created
by the agreement of the parties, and taken out of the statute of
frauds by writings signed by the parties, the complainant shows
his notes to Holtzclaw for the deferred payments of the origi-
nal purchase-money; the bond for title, conditioned to make
title, not to Harrison, but to such persons as he "may direct";
and the tax-list signed and sworn to by Harrison, acknowledg-
ing that he held the lands for Hunter. That these writings
are sufficient to take the case out of the statute of frauds, see
Perry on Trusts, § 82; Browne on Statute of Frauds, 94, and
authorities cited; *Denton v. McKenzie*, 1 Amer. Dec. 654;
*Lehman v Lewis*, 62 Ala. 134. (2.) To raise a resulting trust,
it must be shown that the money of the party asserting it was
used in the original purchase, or that the credit was given to
him, and that he has paid the money. The purchase is consum-
mated when the deed is executed and delivered.—2 Johns. 198;
3 Cowen, 299. No payments made after the delivery and ac-
ceptance of the deed can, be allowed to change its legal effect,
but the antecedent transactions and declarations of the parties
may be inquired into.—*Lehman v. Lewis*, 62 Ala. 129; *Bots-
ford v. Burr*, 2 John. Ch. 405. That Harrison represented to
Holtzclaw that he was buying for Hunter, and that Hunter's
notes were given for the deferred payments, are undisputed
facts. If Harrison used his own money in making the cash
payment, he advanced it as the friend or agent of Hunter, tak-
ing the title to himself as security, and has been fully repaid;
and the defendants as volunteers, succeeding only to his rights,
will be compelled to convey as he would have been.—Perry on
Trusts, § 113; *Lehman v. Lewis*, 62 Ala. 129; *Rothwell v.*

[Bibb v. Hunter.]

*De Witt*, 2 Black, U. S. 613. That the defendants can not set up the statute of frauds, see *Cooper v. Hornsby*, 71 Ala. 62.

CLOPTON, J.—Section 2199 of the Code declares: "No trust concerning lands, except such as results by implication, or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney, lawfully authorized thereto in writing." The trusts, not included in the statute, are implied trusts—resulting, or constructive—such as spring out of the facts of the transaction, independent and exclusive of any agreement between the parties. Whenever the trust rests on an agreement, it must be created or declared by instrument in writing, *signed* by the party creating or declaring the same. *Patton v. Beecher*, 62 Ala. 579. No particular form or precise words are required. Any instrument in writing, signed by the party, at the time of its creation, or subsequently, manifesting the nature, subject-matter, and objects of the trust, with reasonable certainty, may suffice.

The record does not show that the alleged trust is manifested by any writing, *signed* by Harrison, such as the statute requires. While the lists of assessment for taxation, signed by him, may be regarded as admissions of the right of complainant to the portion of the lands contained therein, they do not purport to be the creation or declaration of a trust, either in the whole of the land claimed, or a portion thereof, and are insufficient to prevent the operation of the statute. We may, therefore, dismiss from further consideration the aspect of the case in which the title of complainant to relief is sought to be founded on an express trust.

A resulting trust rests on presumed intention, and is founded on the equitable principle, that the beneficial ownership follows the consideration. The trust results to the party from whom the consideration moves, before, or at the time of the purchase, or of the making of the conveyance. It results, no fiduciary relation existing between the parties, from the original transaction, and at the time it takes place. Generally, in the absence of circumstances showing a different intention or understanding, a trust arises, whenever the purchase-money of land is paid by one person, and the title taken in the name of another, whether the purchase is made by the advancer of the purchase-money personally, or by the grantee. Though a resulting trust arises, where an agent, on a parol undertaking, purchases land for the benefit, and pays for it with the money, of his principal, and takes a deed for it in his own name ; if, nevertheless, in such case, the agent pays his own money for the land, not

having any funds of the principal in hand, and not as a loan, a trust is not created, notwithstanding the principal may subsequently reimburse the agent the amount expended. In *Smith v. Burnham*, 2 Sumner R. 435, Judge STORY says: " I take it to be clear, upon principle, that if one person contracts by parol with another, that he will purchase an estate for the latter, he purchases the estate, and takes the conveyance in his own name, and pays for it out of his own money, and not out of that of the other party, that will not create a trust by implication of law in favor of the other party. The law, in such case, treats it as a parol contract to purchase and hold in trust for the benefit of another; and not as a trust arising from operation of law."—*Lehman v. Lewis*, 62 Ala. 129 ; *Fowke v. Slaughter*, 3 A. K. Marshall, 56.

The foundation of a resulting trust being the payment of the consideration price by the person claiming to be the beneficial owner, if the party who sets it up has made no payment, he can not show by parol evidence that the purchase was made on his account, or for his benefit. There must be in the transaction something more than the breach of a parol agreement. Actual payment of the consideration in *money* is not essential. Payment may be made in labor, property, securities, credit, or any thing of value. " The mode, time, and form, in which the consideration was rendered, are immaterial, provided they were in pursuance of the contract of purchase. It is sufficient, if that which in fact formed the consideration of the deed moved from the party for whom the trust is claimed to exist, or was furnished in her behalf, or upon her credit. The trust results from the purchase and payment of the consideration by or for one party, and the conveyance of land to another." *Blodgett v. Hildreth*, 103 Mass. 484; *Preston & Stetson v. McMillan*, 58 Ala. 84. The other essential facts existing, a trust will be decreed in favor of one who incurs an absolute obligation to pay the consideration, before or at the time of the conveyance, and as a part of the original contract of purchase. 2 Pom. Eq. Jur. § 1037.

The case made by the bill is, that complainant procured and authorized Harrison to purchase for him the lands in controversy ; that, acting under such authority, Harrison, about November 10th, 1878, became the purchaser of the lands, for and in behalf of complainant, under a contract by which the purchase-money, being twelve hundred dollars, was to be paid, one third in cash, and the balance in equal payments at one and two years; that Harrison made the cash payment with money furnished him by complainant, and the complainant executed his two promissory notes for the deferred payments ; that the vendor executed a bond, conditioned to make titles, on payment

of the notes, to such person or persons as Harrison might direct, of the nature of which bond complainant was ignorant until a few months before the filing of the bill; that complainant furnished Harrison money, which he paid to the vendor, and took up the notes; that Harrison paid no part of the purchase-money, and procured from the vendor on November 8th, 1881, after the notes were paid, a deed conveying to him a life-estate in the lands, with remainder to the defendants, who paid no part of the purchase-money. The bill alleges facts, from which it is claimed a trust results, with sufficient preciseness and distinctness; and the inquiry must be addressed to the sufficiency of the evidence to sustain its allegations.

The sufficiency of the evidence must be tested by the application of well-settled rules. The burden of removing the presumption, that the conveyance speaks the truth, rests on the complainant. Appreciating the danger of having deeds or other solemn writings displaced by parol evidence, easy of fabrication, and sometimes incapable of contradiction, the courts have generally upheld the rule, that the presumption arising from the conveyance must prevail, unless overcome by evidence full, clear, and satisfactory. While the verbal declarations or admissions of the grantee are admissible against him, they should be closely scrutinized; and, unless they are plain and consistent, or corroborated by circumstances, are regarded as insufficient basis for a decree establishing a trust—*Larkins v. Rhodes*, 5 Por. 195; *Lehman v. Lewis, supra.*

The only witness who testifies that complainant's money was used in paying for the lands, is complainant himself. Objections were made to his competency to testify to transactions with, or statements by Harrison, who is deceased. The statute —section 3058 of the Code—applies to all cases, and to those only, where a conflict of interest is involved between the party offered as a witness and the estate of a decedent, or between the witness and an adversary party to whom the decedent acted in a representative or fiduciary relation, and where the effect of the evidence tends to diminish the rights of the estate of the decedent, or of those claiming in succession under him, or of the other adversary party.—*Insurance Co. v. Sledge*, 62 Ala. 566; *Dismukes v. Tolston*, 67 Ala. 386. Harrison had only a life-interest in the property; his estate is not interested in the result of the suit—can neither gain nor lose thereby; the defendants do not claim in succession to him; and he was not acting, at the time of the statement or transaction, in any representative or fiduciary relation to them. The evidence does not fall within the exclusion of the statute. Whilst, therefore, in the consideration of the evidence, we shall consider the testimony of complainant, it must be weighed in view

of the fact, that the claim was not set up until after the death of the nominal purchaser, and the resulting impossibility of contradicting it—the lips of the only person who could contradict it being sealed, beyond the power of the court to open—and of the consequent more stringent necessity of corroboration by circumstances.

The first question of fact is, with whose money was the cash payment made? Complainant states, that he delivered to Harrison, about 1878, four hundred dollars, with which to make the payment; that he received the money from the sale of some land in South Alabama, and that Vaughan, his brother-in-law, was present when he delivered the money to Harrison. The testimony of Moses and Vaughan shows, that the land in South Alabama, from the proceeds of which the four hundred dollars delivered in the presence of Vaughan were derived, was not sold until March, 1881, several years after the purchase of the lands in controversy was made, and some months after all the purchase-money had been paid. Holtzclaw, the vendor, testifies that the cash payment was made by crediting the amount on an acceptance of his held and owned by Harrison. It is evident that these witnesses are mistaken, or the complainant is mistaken as to the time he delivered the money to Harrison. It may be, that the four hundred dollars delivered to Harrison in March, 1881, was intended to refund the first payment, which had been made by him. The record does not disclose or indicate any other purpose or reason, unless it be the amount paid by Harrison on the notes for the deferred payments. But there is no pretense, and the bill negatives the inference, that the payment was made by Harrison as a loan. No subsequent conduct, dealing, agreement or payment, disconnected from the original transaction, will raise a resulting trust.

The declaration of Harrison, that he was buying the land for complainant, qualified by his further declaration, that he was making the purchase in complainant's name on account of some judgments against himself, and that he expected to give it to complainant; and his declaration to Clisby, made under the circumstances, and for the purpose of raising money to pay the notes of complainant, are too unsatisfactory and inconsistent to be made the basis of a decree; especially when the facts, on which a resulting trust can be founded, are disproved by the other evidence. Neither a verbal declaration of the nominal purchaser, that he is buying for another, without proof that the purchase-money was paid by such other, nor an inchoate, incomplete, and unexecuted intention to give, will raise a resulting trust.

It may be conceded, there are declarations and admissions of

Harrison, inconsistent with the theory that the lands were pur-
chased on his own account, and for his own benefit, and which
tend to show that he was purchasing them for complainant, by
agreement, as his agent. On the other hand, we have the
written admission of complainant, that he had no claim to
certain land, which was included in the purchase, and Harri-
son's statement to complainant, that he would turn the land
over to him as soon as he got the balance of the purchase-
money out of it. The circumstances, declarations, and admis-
sions may tend to prove that the lands were purchased by an
agreement of some kind; but the true character of the trans-
action remains in uncertainty and confusion. It is not suffi-
cient that the evidence generates doubt and uncertainty. The
declaration of a trust, as claimed by the bill, involves a disre-
gard of most salutary principles, and abrogates rules indispen-
sable to the certainty and conservation of solemn and deliberate
writings. The evidence is insufficient to authorize a decree of
a trust in favor of complainant, to the extent of the entire
lands.

The remaining inquiry is, can a trust be decreed in favor of
complainant in a part of the lands? It is clear beyond
question, that complainant executed his notes for the deferred
payments, and thereby incurred, at the time of the purchase,
and as a part of the original transaction, an absolute obligation
to pay—in other words, that so much of the consideration
moved from him. The money was sent from Mobile, and the
services, for which Harrison was indebted, were rendered prior
to the purchase of the lands. They constituted a debt due by
Harrison, and were not furnished for the purpose of paying the
notes, though there may have been a subsequent parol agree-
ment, that the indebtedness should be so discharged. The
notes, as the vendor testifies, were paid by Harrison, partly in
money, and partly in orders drawn by the *cestuis que trust*, for
whose benefit he sold the land. If a trust *pro tanto* was
created in favor of complainant, at the time of the purchase,
by incurring the absolute obligation to pay, the subsequent
payment of the notes by Harrison, who had incurred no obliga-
tion to pay them, can not operate to remove or defeat such
trust. Such payment only constituted him a creditor, with the
right to reimbursement.

It has been said generally: "There can be no resulting trust
of an estate to a particular extent of its value, leaving the
residue of its value in the grantee;" that the beneficial owner-
ship in the entire estate must exist—an unmixed trust of the
ownership and title, and not a charge for the re-payment of an
advance or other demand, nor an equity to a sum of money to
be raised out of the lands. It was also said by Chancellor KENT,

[Coltart v. Moore.]

that a trust results *pro tanto*, where part of the purchase-money is paid by a third person, contemporaneously with the purchase; which statement of the rule has been in words adopted in many cases. A comparison of the authorities shows that these general statements may be harmonized, by being understood as subject to the qualification, that when a partial payment, *being a definite aliquot part of the consideration*, is made, a trust in a corresponding aliquot part of the land will result. But, unless the payment be of an aliquot part of the consideration—if the amount be indefinite or uncertain—no trust results by implication of law: "a general contribution of a sum of money towards the entire purchase is not sufficient." 1 Smith's Lead. Cases (4th Am. Ed.), 339; *Botsford v. Burr*, 2 Johns. Ch. 406; *White v. Carpenter*, 2 Paige, 217; *McGowan v. McGowan*, 14 Gray, 119. This rule must be understood as referring to simple resulting trusts, as distinguished from investments of trust funds by trustees, or other persons acting in a representative or fiduciary capacity. If, therefore, the notes of complainant were for an aliquot part of the whole consideration, a trust results *pro tanto*, and will be decreed, on a proper case, complainant having reimbursed, or on his reimbursing Harrison, the amount expended by him in paying the notes. As to this, the evidence is somewhat uncertain. It is unnecessary, however, to consider, whether the evidence brings the case within the operation of this rule, as such relief can not be granted on the bill as it now stands.

Reversed and remanded.