# Burke *v.* Andrews.

*Bill in Equity to establish Resulting Trust in Lands.*

1. *Resulting trust in lands; sufficiency of parol evidence.*—A resulting trust in lands, arising from the payment of the purchase-money by a tenant for life with funds belonging to the complainants as remainder-men, taking the title in his own name, may be established by parol evidence; but, to have this effect, the evidence must be clear and convincing, and in this case the court holds it insufficient.

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 12th September, 1882, by Mrs. Jane Andrews and her sisters, all being married women, against their brother, James A. Burke, his wife and children; and sought to establish and enforce a resulting trust in a tract of land, which had been bought by their mother, Mrs. Jane J. Burke, and afterwards conveyed by her to said James A. Burke in trust for his wife and children, on the ground that the purchase-money was paid by her with funds which belonged to the estate of her deceased husband, Abraham Burke, who died in 1854, making her the executrix of his will without bond; and that she had only a life-estate in the property under the terms of the will, with remainder to their children. On final hearing on pleadings and proof, the chancellor rendered a decree for the complainants; and his decree is here assigned as error.

A. H. MERRILL, for appellants.

JERE N. WILLIAMS, *contra.*

CLOPTON, J.—Complainants, who are appellees, base their claim to a trust in their favor upon their right as legatees under the will of their father, Abraham Burke, who died in 1854, and their equity to charge the land in the bill described with such a trust, upon the alleged fact, that the money of the estate was invested in its purchase. The bill avers that by the will a life-estate in the real and personal property of the testator was given to his widow, Jane J. Burke, who was appointed executrix, with remainder to his children, excepting one who was disinherited. Secondary evidence of its contents having

[Burke v. Andrews.]

been admitted, without objection to the sufficiency of proof of loss or destruction, such an objection can not be made for the first time on appeal.   And while it is manifest there is a variance between the allegations and proof of the contents, we shall pretermit consideration of the question, whether the variance is fatal to the complainants' right of recovery on the bill as framed, preferring to rest our conclusion on grounds finally decisive of the rights of the parties.

Tested by the well settled rules, that where it is sought to engraft a resulting trust upon a conveyance absolute in its terms, the proof of the facts from which it is claimed the trust arises must be clear and convincing, and that the burden is upon the complainants to overcome the presumption that the conveyance speaks the truth, the evidence is insufficient to constitute the basis of a decree establishing the trust.   Bizzell, who was examined on the part of complainants, testified that, at her request, he assisted Mrs. Burke in purchasing the land, was familiar with her affairs, and the affairs of her husband prior to and at the time of his death, and knew that the money with which the land was paid for, belonged to his estate. On the other hand, David S. Burke, examined on the part of defendants, testified with equal positiveness, that the money used in paying for the land was the individual money of Mrs. Burke.   In determining the weight to be given to the testimony of these witnesses, their relation to the case and the parties should not be overlooked; Bizzell being the husband of one of the complainants, and Burke, the brother of complainants and the defendant James A. Burke, taking no estate under the will, and having no interest in the result of the suit.

Complainants, also, rely on some evidence of loose and general declarations by Mrs. Burke,—such as when Andrews, who is the husband of another of the complainants, endeavored to buy from her, in 1869, or 1870, a few acres of the land, she said she could not give or sell it to him, for, if she did, he would lose it, as the other heirs would claim it, and her declaration that she was out collecting money to pay for the land.   Such declarations should always be received with great caution, especially after the death of the grantee; and unless plain and consistent, or corroborated by other facts and circumstances, do not authorize a decree establishing the trust.—*Bibb v. Hunter*, 79 Ala. 351.   These declarations, however, are overborne by a contrary declaration, more explicit, more certain, and as to which there can be no mistake, or misunderstanding. It appears from a certified transcript of the record of the Probate Court, put in evidence by complainants, that Mrs. Burke, in the report of her receipts and disbursements made in Octo-

ber, 1867, for an annual settlement, stated that the land on which the cotton was grown, with the proceeds of which she charged herself, was her own land, and claimed and was allowed rent for the same. The evidence shows that the cotton was grown on the land now in controversy. If the land in equity belonged to the estate, the claim for rent was unfounded. To this settlement the complainants were parties, the record reciting that notice was given as required by law. Then was the time for them to speak, when Mrs. Burke was living, and the facts could have been more certainly and satisfactorily proven.

Furthermore, the preponderance of the evidence is in favor of the contention of defendants, that Mrs. Burke paid for the land with her own money. The only property of the estate shown to have been sold was some perishable property in Coffee county; the amount received does not appear. The lands in that county were not sold, and the slaves were emancipated. In the report to the Probate Court of Barbour county, to which the administration was removed, above referred to, Mrs. Burke stated that she made a full settlement of her administration up to November, 1859, in Coffee county where the will was probated. This settlement is not produced. She further stated that she had used and paid out all the assets of the estate, for the benefit of the estate, and for necessaries. And on that annual settlement, the Probate Court of Barbour county, on auditing her account of receipts and expenditures since the removal of the administration to that county, ascertained that the estate was indebted to her in the sum of $3,603.93. There is an absence of evidence tending to show that the executrix had in her hands money of the estate when she made the payments for the land.

As to having money of her own, David S. Burke testified that, in 1853, he saw his father hand Mrs. Burke fifteen hundred dollars in gold, on his return from Georgia, telling her that it was her money. In this, he is corroborated by Amanda Williams, who is the daughter of Mrs. Burke's sister. She states that Mr. Burke went to Georgia, and received his wife's share of her father's estate, consisting of a negro girl and some paper money; that he went to Savannah, and exchanged it for gold, which he brought to Alabama. How much money she does not know, but her mother's share of the estate was about eighteen hundred dollars. We allude to this evidence as showing she had money separate from the estate, and not because it tends to show that she used this money to pay for the land. She bought the land in 1856, seven hundred and fifty dollars being paid at the time, and the other payments

completed in November, 1859. Simeon Wallace states that, in 1856, or 1857, he purchased from Mrs. Burke a negro woman she received from her mother's estate, and paid her six or eight hundred dollars, or thereabouts. This was after Mr. Burke's death. The coincidence in time and amount of the money Wallace paid her and the cash payment leads to the conclusion, that this was the money with which the cash payment was made. The evidence shows that the deferred payments were made with the proceeds of the crops grown on the land during the first two years after its purchase. During these two years, only the negroes belonging to Mrs. Burke were employed in its cultivation. In 1859, she brought the negroes of the estate, and worked them on the land, and from that time she accounted for the crops as executrix. But, had the land been cultivated from the time of its purchase, by the joint labor of her negroes and those of the estate, if she had a life-estate under the will, the proceeds of the farm would have belonged to her.

A review and examination of the evidence demonstrates, not only that complainants have not removed, but that the preponderance of evidence supports, the presumption arising from the conveyance absolute in its terms, and taken in the name of Mrs. Burke. We have considered the evidence with more particularity than otherwise we would have done, because we are forced to differ with the chancellor in his conclusions of fact.

The decree is reversed, and decree rendered dismissing the bill.