# Hillens v. Brinsfield.

*Petition for Sale of Land for Partition Among Tenants in Common.*

| 108 | 605 |
| 108 | 605 |
| 108 | 605 |
| 111 | 231 |
| 111 | 296 |
| 111 | 321 |
| s113 | 305 |
| 108 | 605 |
| 128 | 179 |

1. *Sale for division; jurisdiction of Probate Court.*—Equality of interest between tenants in common is not essential to the jurisdiction of the Probate Court to decree a sale of land for division between them.

2. *Code, § 3251 construed.*—Code, § 3251, which provides that no division or partition can be made when an adverse claim or title is asserted by any one, or brought to notice, does not apply to a petition for a sale for division among tenants in common

3. *Cases overruled.*—The two systems, that of a partition or division between tenants in common, embraced in §§ 3237 to 3252, and that of a sale for division among them, embraced in §§ 3253 to 3259, are separate and distinct. To this extent, the cases of *Johnson v. Ray*, 67 Ala. 603; *McCorkle v. Rhea*, 75 Ala. 213; *Ballard v. Johns*, 80 Ala. 32, and *Wolffe v. Loeb*, 98 Ala. 426, are overruled.

4. *Sale for division; adverse claim.*—The only assertion or claim of title which can defeat a petition for a sale for division among tenants in common is an actual adverse possession of the land, under a claim of exclusive ownership against the petitioner, by a defendant in the proceeding, which has not been tried at law, and determined in petitioner's favor before the petition is heard.

5. *Same; parties to petition.*—A person alleged to be in possession of the land sought to be sold, but who is alleged to have no interest therein, is improperly made a defendant to the petition.

6. *Same; competency of witness.*—Testimony of one party of the execution to her of a lost deed by a common brother, is incompetent against the other.

APPEAL from Montgomery Probate Court.
Tried before Hon. F. C. RANDOLPH.

The appellee, Emma Brinsfield, filed her petition against appellant Charles Hillens and Kate Monfee, praying that certain lands described in the petition be sold for a division between her and said Kate Monfee. She alleged in her petition that she and Kate Monfee each owned an undivided half interest in the land, and that it could not be equitably divided without a sale; that Hillens was in possession thereof, and disputed any right of petitioner therein; but that petitioner recovered possession of an undivided half interest in the land, in a suit instituted by her against Hillens and another.

Hillens and Monfee answered, averring that Hillens had a life estate in the whole of the land sought to be sold, and that of the interest in remainder, Kate Monfee owned two-thirds, and petitioner one-third. They admitted the recovery against Hillens alleged in the petition, but averred that a suit was still pending in the Circuit Court of said county wherein respondents sought to recover of petitioner all of said lands. A replication, and demurrer thereto, were interposed but they are not necessary to an understanding of the opinion.

The evidence showed that the property in 1855 was owned by Marian E. Cura, who was the mother of petitioner and Kate Monfee, and that her only other child was one Charles Cura; that in December, 1857, Marian E. Cura conveyed the land to petitioner, Kate Monfee and Charles Cura, reserving an estate for her life. She died in 1886. Evidence was introduced to show that Marian E. Cura married appellant Hillens in January, 1858. Charles Cura died intestate and without children before his mother. It was attempted to be proven by Kate Monfee that Charles Cura had executed a deed conveying his interest in the property to Hillens for life, with remainder to Kate Monfee. That deed was lost. On motion of petitioner, this evidence was excluded.

On hearing, a decree was rendered ordering a sale of the property, and therefrom defendants appeal.

CHAS. WILKINSON, for appellant.—As an adverse claim was asserted, the petition should be dismissed.—Code, § 3251.

THOS. H. WATTS, *contra*.—The Judge of Probate had a right to investigate the *bona fides* of the claim of adverse

[Hillens v. Brinsfield.]

possession.—*Ballard v. Johns*, 84 Ala. 71 ; Kate Monfee was interested in the result of the suit, and could not testify to a transaction with Charles Cura.—*Fort v. Davis*, 67 Ala. 485.

HEAD, J.—Petition for sale of land for division among tenants in common, alleging the statutory jurisdictional facts, and showing petitioner and respondent, Kate Monfee, to be tenants in common of the land, in equal interests. Before the petition was filed, respondent, Charles Hillens, had asserted an adverse claim to, and possession of the land, but at the suit of petitioner, in an action of ejectment against Hillens, in the proper law court, she recovered of him possession of an undivided one-half interest. These facts are alleged in the petition, and Hillens, by reason of them, is brought in as a party defendant. Hillens and Kate Monfee jointly defend, and by plea or answer set up adverse claims to the land and rely upon the provision of the statute that, "No division or partition can be made under this article, when an adverse claim or title is asserted by any one, or brought to the knowledge of the commissioners, or of the judge of probate."—Code, § 3251. We will dispose of the claim of Hillens further on. The adverse claim set up by Kate Monfee is that her interest in the land is an undivided two-thirds, in remainder or reversion, dependent upon a life estate in Hillens, and not an undivided half interest, in possession, as alleged in the petition. This defense concedes that petitioner and respondent, Kate, are tenants in common—the difference between them being as to the *quantum* of their respective interests. Equality of interests is not essential to the jurisdiction of the Probate Court to decree a sale for division ; but it is claimed that the fact that defendant, Kate, claims a greater interest than that conceded to her by the petition, implies, if made in good faith, the assertion of an adverse claim within the meaning of the statute.

The issue thus presented leads us, seriously, to inquire whether or not the provisions of said section 3251 of the Code, are legally applicable to petitions, under the statute, for the *sale* of lands of tenants in common, for distribution—whether or not they apply alone to proceedings for partition of lands. In the years 1803 and

1806, the territorial legislature, superseding the common law writ of partition, enacted statutes providing for the partition of lands among coparceners, joint tenants or tenants in common. These acts continued of force until the adoption of Clay's Digest, in 1843, and were, in substance, carried into that compilation, beginning at page 386, thereof, under the heading, "Partition." As thus copied, there were 13 sections. The first section conferred upon any coparcener, joint tenant or tenant in common of any tract or tracts of land within the State, the right to apply to any one or more of the judges of the circuit courts of the State, or to any judge of the county court of the county wherein the lands lay, for partition of such lands; whereupon the judge was required to ascertain the number of shares or parts in which the lands were held by the owners, and to nominate three commissioners to make the partition; and he was required to give six weeks notice, in a newspaper, of the application, describing the lands, and that he had nominated the three persons, naming them, to divide the lands, who would be appointed as such, if proper objections were not made by a day specified. This application was not required to be made in writing. By section 2, no objections, by him held proper, being made, the judge was required to appoint the persons named, as commissioners, in writing, under his hand and seal, to make the partition, pursuant to the directions of the act; describing, in the writing, the tract or tracts to be divided, and the number of parts or shares into which it is to be allotted. On proper objections, other commissioners were to be appointed in their stead. By section 3, the commissioners were required to be sworn in a manner prescribed. By section 4, it was provided how they should proceed to make the division into shares, requiring, among other things, that, "if the bounds of any tract or tracts, so to be divided, shall be controverted, the commissioners are hereby directed, if such controverted part is valuable, to separate the same from the uncontroverted part, and make partition of the tract or tracts, in such manner, that a proportion of the controverted part may be allotted to each share, as well as a portion of the uncontroverted part." By subsequent sections, detailed provisions were made for the direction of the commissioners, in allotting to the several owners

their shares, by lot or ballot; the notice to be given by them; the production of evidence before them; their return, in writing, of their proceedings; record thereof, and other matters not necessary to specify. By section 12, it is provided that nothing in the act contained, shall be so construed as to tend to injure, prejudice, defeat, or destroy the estate, or title of any person or persons claiming such tract or tracts of land, or any part thereof, or anything therein, by title paramount or superior to the title of such coparceners, joint tenants or tenants in common, among whom partition is to be made. By section 13, separate provisions were made for the division of lands among devisees, agreeably to the will; and among heirs of intestates; in both cases, where any of the devisees or heirs were under age.

This continued to be the law until the adoption of the Code of 1852, when, by that Code, some material changes were made in it. The remedy was confined to lands held by joint tenants or tenants in common, in fee; the parties interested therein all being of full age; and the application was required to be made in writing, to the judge of probate of the county in which the lands were situated. Such are the provisions of section 2677 of the Code of 1852, and it is important to bear this in mind, in connection with what will be said hereafter, touching that section. Section 2678, required that the application set forth the names of all the persons interested in the land, and their residence, a full and accurate description of the land to be divided, the interest of each person in the land, and the number of shares into which it was to be divided. The subsequent sections to 2685, provided for the appointment of commissioners to make partition; how they should proceed and make return, &c. Section 2685, declared the effect of the partition as to the vesting of title, in the several owners, to the shares allotted to them respectively; then, after other minor provisions, section 2690 was inserted, as follows: "No division or allotment can be made under this chapter where an adverse claim or title is asserted by any one, or brought to the knowledge of the commissioners, or judge of probate." On February 15th, 1854, said section 2677 was amended so as to apply to the interests of minors as well as adults.—Acts 1853–4, p. 72.

Up to this period, no statute had been enacted pro-

viding for the *sale* of lands of joint tenants or tenants in common, except certain provisions pertaining to the administration of estates of deceased persons, regulating sales for division among heirs of decedents, which have no bearing upon the acts under consideration; but on February 5, 1856, an act was passed, entitled "An act to amend the act approved Feb. 15, 1854, and to extend the jurisdiction of the probate courts of the several counties in this State." The first section of this act was as follows: "That section 2677 of the Code of Alabama, and the act approved February 15, 1854, be so amended as to give the judges of the probate court, in the several counties in this State, full jurisdiction and authority to decree and order a sale of all property, whether the same be real, personal or mixed, held by joint owners or tenants in common, when the same cannot be equitably partitioned and divided between such joint owners and tenants in common—and this act shall extend to and include all such cases when the property to be partitioned is held and owned by parties of adult age, or when some are of full age and others are minors or persons of unsound mind, or when they are all infants or persons of unsound mind." The second section provided, "That upon the petition or application in writing of any of the parties in the first section of this act mentioned, his or their guardian or other lawful representative, setting forth that such property cannot be equitably partitioned or divided without a sale of the same, the judge of probate shall, upon the filing of such petition, appoint a day for the hearing of the same, not less than thirty days from its filing. All parties shall have at least ten days' notice of the time and place set for the hearing of such application; and in case where infants or persons of unsound mind are parties, guardians *ad litem* must be appointed by the said court." The third section provided: "That upon the hearing of such application, if the judge of probate shall be satisfied from the proof, that the property thus held and owned in common cannot be equitably partitioned and divided among all the parties in interest, he shall decree the same to be sold, and make and issue all such orders as may be necessary to effect the sale thereof—to appoint suitable commissioners, not more than five, any three of whom may act—and the same shall be con-

ducted in all respects as is done when property, in the hands of an executor or administrator, is to be distributed." The 4th, 5th and 6th sections provided as follows: "Sec. 4. That if any of the parties in interest are non-residents, whether they be adults, minors or persons of unsound mind, they shall be made parties in the same manner and to the same extent as is done when property, in the hands of an executor or administrator, is to be divided or distributed; and all laws now in force, or that may hereafter be enacted, making non-residents parties in the division or distribution of property, in the hands of an executor or administrator, shall apply to all applications under and by virtue of this act." "Sec. 5. That before granting any application under this act, the said judge of probate must be satisfied by evidence, taken as in chancery cases, that an equitable partition or division cannot be made; and when the application is by the guardian of any one or more of the infants or persons of unsound mind, the judge of probate must not only be satisfied that such property cannot be equitably divided, but that it would be to the interest of such infants or persons of unsound mind to sell the same for the purpose of partition and division." "Sec. 6. That in the event any of the parties interested in property, whether the same be real or personal, held in common, should die, then, in that event, the provisions of this act shall fully apply to his or her executor or administrator." See Acts 1855-6, p. 20.

It is thus made apparent, that, while the 1st section begins with the words, that section 2677 of the Code, &c., *be amended*, the act, in effect, was not, properly speaking, an amendment of that section. The provisions of the new act were clearly not intended to be added to and made part of said section 2677, thereby bringing them in context with those sections of the Code following 2677, regulating the procedure and machinery for making partition of *lands* among joint owners, &c., but it was, in effect, a new general law upon a distinct subject, towit, the *sale* of property, *real, personal or mixed* for distribution among joint owners or tenants in common; and, realizing that the procedure prescribed by the Code for partition of *lands* could not all apply, the new act expressly provided, by sections

2, 3, 4, 5 and 6, above copied, all necessary procedure to carry into effect the new jurisdiction conferred upon the probate judge, in the first section. It was thus a general law, complete in itself, intended to cover the whole subject, and not designed to be interwoven with the provisions of the Code regulating partition, requiring construction to eradicate the incongruities which such a combination would present. So it was, when the Codes of 1867, 1876 and 1886 came to be made and adopted, said section 2677 of the Code of 1852 was not carried into them, combining the two jurisdictions; but, though both were placed in the same chapter, the two systems—partition and sale—were kept separate and distinct—the jurisdiction of partition, with its old and peculiar provisions, being first stated, in sundry sections, and the jurisdiction to sell, with its peculiar procedure, substantially as contained in the act of 1856, being next stated; and it will be observed that in these several Codes, the section, which we now have under special consideration, in reference to adverse claims, was preserved as a part of the partition system, in the identical words in which they appeared in the Code of 1852; which, as we have seen, was before we had a statute for the sale of property of joint tenants, &c. That language was, that "no *division or partition* can be made under this article, when an adverse claim or title is asserted by any one or brought to the knowledge of the commissioners or of the judge of probate." In the proceedings for a sale it is manifest that no division can take place until the property is sold under decree; and it seems too clear for argument, that if it was intended that the assertion of an adverse claim should bar a decree for a sale, or the sale itself, the necessity for the insertion of the words to that effect could not have escaped the codifiers or the legislature. This is exemplified by the phraseology of section 3262, which is: "The chancery court shall have concurrent jurisdiction with the probate court to divide or partition, or to sell for division or partition, any property, real, personal, or mixed, held by joint owners or tenants in common." In the later codifications the jurisdiction was conferred on the probate court, instead of the judge.

We are aware that in *Johnson v. Ray*, 67 Ala. 603,

[Hillens v. Brinsfield.]

this court, without entering upon these considerations, and without making it a question for discussion, at all, assumed, and so held, that the third section of the partition statute (now section 3239 of the Code of 1886) which prescribes what the written application for partition shall contain, was applicable to a proceeding for the sale of lands for distribution; and that in *McCorkle v. Rhea*, 75 Ala. 213, it was held that an application for the sale of lands was fatally defective, on collateral attack, which failed to set forth the names of all the persons interested in the property; and the last named decision was put upon the ground that said section 3239 of the Code, required such averment. A similar position was assumed, in *Ballard v. Johns*, 80 Ala. 32, and these cases were followed, without discussion, in *Wolffe v. Loeb*, 98 Ala. 426. Indisposed, as we were, to overrule these cases, we have given the question frequent and extended discussion, in consultation, and the disposition of the cause has been delayed in consequence. The conclusion we have reached, however, is, that, for the reasons we have tried to set forth in this opinion, the two systems are separate and distinct, each complete in itself; the first, that of partition, being comprehended in sections 3237 to 3252, inclusive, and the second in sections 3253 to 3259, inclusive, of the Code of 1886. It is apparent, sections 3206 and 3262 are applicable to both systems. The decisions referred to, upon the questions considered, must be overruled.

Considering, in this connection, a similar question, raised in the case of *Nathan Griel v. John Randolph*, from the Montgomery city court, now before us on application for re-hearing, we reaffirm the opinion filed, in that cause, and hold that the provisions of section 3239 of the Code, which requires the application for partition to set forth the residence of the persons interested in the property, if known, does not apply to the petition for a sale of the property for distribution.

We must not, however, be understood as holding, that the statutory system for the sale of property for distribution, as embodied in sections 3253 to 3259, inclusive, *supra*, does not require the petition for a sale to set forth a proper description of the property to be sold, and to make the joint tenants, or tenants in common, parties thereto, showing their respective interests in the prop-

erty.   In all judicial proceedings, the essential facts constituting the cause of action, must appear, in a way that an issue can be formed upon them, and so that the court can proceed, in an intelligent manner, to observe and enforce the rights of the parties.   When we read and analyze the several provisions of the several sections of this system, we see· plainly, that no case would be stated, upon which the court could intelligently act, which failed to show that there was a joint or common property, and what that property was; that there were joint or common owners thereof, who they were, and their respective interests therein.   These, and the express requirement of section 3254, that it must be stated that the property cannot be equitably divided or partitioned without a sale thereof, constitute the cause of action, without which no judicial action could be upheld. And, since special proceedings on the part of the judge or court are required to be had to bring infants and persons of unsound mind, if any, and non-residents, if any, properly into court, the petition ought, regularly, to show who are infants or persons of unsound mind, or non-residents, if any.

Recurring then, to the subject of adverse claims, as affecting the right of the court of probate to proceed, we hold that the mere assertion by one of an adverse claim or title, brought to the knowledge of the commissioners or judge of probate, even though made in good faith, does not deprive the probate court of its jurisdiction to render a decree of sale, nor stop the execution of such a decree, when rendered.   But, in laying down this rule, there is another principle—a principle of the common law—which must not be overlooked.   It is never permissible·to suffer a judicial proceeding, seeking another and different recovery or relief, to be made a substitute for the action of ejectment.   Thus, in a bill to foreclose a mortgage, for instance, a third party holding and claiming the land adversely to the mortgagor and mortgagee, cannot properly be brought in to litigate his claim with them.—*Dial v. Reynolds*, 96 U. S. 340; *Peters v. Bowman*, 98 U. S. 56.   An action for use and occupation cannot be used as a remedy to try the defendant's asserted claim of title to the land; so that, if it appears the defendant was in the adverse possession of the land, during the time of the· use, the action will

[Hillens v. Brinsfield.]

be defeated. Nor an action for money had and received, accruing from lands adversely held.—*Price v. Pickett*, 21 Ala. 741; *Weaver v. Jones*, 24 Ala. 420; 1 Brick. Dig. 149, § 206. And in a bill in equity for partition, if complainant is proceeding upon a legal title, the court will not proceed, if a defendant is in adverse possession, to the entire exclusion of the complainant, until the title is tried, either before a jury in chancery, or in an action at law; and the cause will be retained to await such trial. Indeed, in that forum, a further step is taken in this direction, and the court will not proceed in partition, when the complainant's title is not equitable merely, if a defendant is asserting a *bona fide* exclusive claim to the property, whether in adverse possession or not; and the chancery court, in directing a trial of the issue at law, will, by order, compel the defendant to admit ouster by himself of the complainant, so that the action may be maintained, as a condition upon which he will be allowed to make his defense of adverse claim to the bill.—*Horton v. Sledge*, 29 Ala. 478; *Garrett v. White*, 3 Ired. Eq. 131. The principle is, that adverse possessions under claim of exclusive right to the estate must not be disturbed, except by a constitutional trial at the common law. Applying these rules to the present proceeding, and bearing in mind that the court of probate is without power, upon the assertion of a mere claim, without adverse possession, to compel the defendant to admit ouster of the petitioner, whereby the petitioner may maintain an action of ejectment, we conclude that the only hostile assertion which can defeat the petition, is an actual adverse possession of the land, under a claim of exclusive ownership against petitioner, by a defendant in the proceeding, which had not been tried at law, and determined in petitioner's favor, before the petition is heard. See *Gore v. Dickinson*, 98 Ala. 363; *Sellers v. Friedman*, 100 Ala. 499, *McMath v. DeBardelaben*, 75 Ala. 68. To hold that a mere assertion of a hostile claim, without adverse possession, is sufficient, would deprive the petitioner of the right to proceed in the probate court, although he was powerless to maintain an action at law; since such an action can only be maintained when the defendant has ousted or disseized the complainant, or admits himself so to have done.

[Hillens v. Brinsfield.]

In the present case, Kate Monfee admits that she is tenant in common with the petitioner. She sets up no ouster or adverse possession. She merely insists (the claim of Hillens being out of the case) that she owns two-thirds, instead of one-half interest, as averred in the petition. In such a case, the probate court clearly has jurisdiction to determine the extent of the interests of the several owners. That is one of the issues presented by the petition, which the court must try upon the evidence, and its decree is conclusive upon the parties. The adverse possession, which will defeat the petitioner, must, as we have said, exclude the petitioner entirely. —*Stewart's heirs v. Coalter*, 4 Randolph (Va.) 731; S. C 15 Am. Dec. 731; *Holloway v. Holloway*, 97 Mo. 628; S. C. 10 Am. St. Rep. 339. From what has been said, it is apparent that Hillens was improperly brought in as a defendant. He was not alleged to be a tenant in common, entitled to share in the distribution of the proceeds, and he could not properly be brought in to litigate in this proceeding his adverse assertions of title. We treat the case, therefore, as if he had not been mentioned.

The defendant, Kate Monfee, was not competent to testify that the deceased brother of herself and petitioner, who, in life, owned a one-third interest in the land, conveyed that interest to Hillens for life, with remainder in fee to herself, the alleged deed of conveyance being lost. Petitioner's claim is that she and her sister, the defendant, Kate, inherited the one-third interest of the deceased brother, and the latter cannot impair that claim by testifying to transactions had by her with the deceased.—*Key v. Jones*, 52 Ala. 238; *Boykin v. Smith*, 65 Ala. 294; *Goodlet v. Kelly*, 74 Ala. 213; *Bibb v. Hunter*, 79 Ala. 351; *Miller v. Cannon*, 84 Ala. 59; *Hodges v. Denny*, 86 Ala. 226; *Dolan v. Dolan*, 89 Ala. 256. Pretending no ouster of petitioner, by herself, she shows no such adverse claim as deprives the probate court of its jurisdiction.

Affirmed.